IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 15, 2001 Session

## STATE OF TENNESSEE v. RANDALL RAY MILLS

**Appeal as of Right from the Circuit Court for Marshall County**
**No. 14007     Charles Lee, Judge**

---

**No. M2000-01065-CCA-R3-CD - Filed October 17, 2001**

---

The defendant, Randall Ray Mills, was convicted in the Marshall County Circuit Court of one count of rape of a child, three counts of aggravated sexual battery, and one count of casual exchange. At the sentencing hearing, the trial court merged all of the defendant's convictions of aggravated sexual battery into the conviction of rape of a child and sentenced the defendant to a total effective sentence of twenty years incarceration in the Tennessee Department of Correction. On appeal, the defendant challenges the sufficiency of the evidence supporting his convictions. Additionally, the State challenges the trial court's merger of the aggravated sexual battery convictions into the rape of a child conviction and further contends that the trial court erred in sentencing the defendant. Upon review of the record and the parties' briefs, we affirm in part and reverse in part the judgment of the trial court and remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed in Part, Reversed in Part, and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Andrew Jackson Dearing, III, Lewisburg, Tennessee, and Gregory D. Smith, Clarksville, Tennessee, for the appellant/cross-appellee, Randall Ray Mills.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Smith, Assistant Attorney General; W. Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee/cross-appellant, State of Tennessee.

### OPINION

### I. Factual Background

On March 15, 1999, the victim, twelve-year-old C.M.,[1] lived in a duplex apartment in Lewisburg with her mother, Penny Martin, and her sister, Jennifer Hastings. The victim's residence was on one side of the duplex, and the defendant lived with his two sons on the other side of the duplex. On the day in question, Martin was visiting her father at St. Thomas Hospital in Nashville and had left Hastings in charge of C.M. During the afternoon, C.M. had spent time talking with the defendant's sons, "Little Randy" Mills and Dale Mills.

At approximately 4:00 p.m., while C.M. was sitting in the yard outside the duplex, the forty-three-year-old defendant, "Big Randy" Mills, approached her. The defendant told C.M. that "he had dope over at his house and to come over later." C.M. understood that the defendant was offering to smoke marijuana with her. C.M. returned to her home where she listened to the radio and watched television with Hastings and Hastings' boyfriend, Robert Hodge. At approximately 8:45 p.m., Hastings told C.M. that she needed to go to bed in order to be rested for school the next day. C.M. chose to sleep in the living room because she was afraid to sleep in her own bedroom while her mother was out of town. Hastings and Hodge went to Hastings' room to listen to the radio.

Soon thereafter, C.M. slipped out of the residence and went next door to the defendant's residence. After the defendant answered her knock on the door, C.M. followed the defendant into his living room where he was watching television and ironing clothes. Both of the defendant's sons were in their bedrooms. After approximately five minutes, the defendant told C.M. that "it was in his room," and C.M. and the defendant went into the defendant's bedroom where the defendant locked the door. C.M. noted that the room was lit by three candles, and the bedroom window was completely open.

C.M. sat on the bed with her feet touching the floor. The defendant pulled a marijuana cigarette from his shirt pocket and lit it. He "took a puff" and passed the marijuana cigarette to C.M. who also smoked it. After C.M. had taken three "puffs" from the marijuana cigarette, she did not want to smoke any more. She tossed the remainder of the marijuana cigarette out the bedroom window. The defendant then pulled a second, shorter marijuana cigarette from his shirt pocket and smoked that cigarette himself. C.M. testified that the marijuana made her feel "dizzy and light headed. I couldn't see or feel or anything."

C.M. related that, while her head was spinning from the effects of the marijuana, the defendant pushed her back onto his bed. With his hand, the defendant rubbed C.M.'s vagina through her blue jeans. The defendant then slipped a hand inside C.M.'s shirt, unclasped her bra, and fondled her bare right breast. The defendant removed his hand from her breast and, using both hands, pulled her blue jeans and her panties down to her ankles. At this point, the defendant kneeled in front of C.M., put his mouth over her vagina, and licked her. The defendant proceeded to repeatedly penetrate the victim's vagina with his finger. C.M. estimated that this action continued for approximately five minutes. C.M. knew the defendant had penetrated her with his finger "[b]ecause it hurt." The defendant then vaginally penetrated the victim with his penis. C.M. knew the

---

[1] This court uses only initials to identify minor victims of sexual offenses.

defendant had penetrated her with his penis "because it hurt worse" than the digital penetration. C.M. asserted that she was "high" throughout the incident and, although she tried to tell the defendant to stop, she was unable to speak.

Hastings, who had heard C.M. leave the duplex, began to search for C.M. When she was unable to locate C.M. in the backyard, she asked Hodge to join the search. They got into Hodge's car and drove around the area for approximately five minutes, searching for C.M. When he heard Hodge's car start, the defendant stopped his actions, and C.M. immediately dressed. As C.M. left the defendant's residence, he put a twenty-dollar-bill in C.M.'s blue jeans pocket and said, "Here is $20, thanks." The defendant further told C.M., "If you tell anybody I am just going to deny it." C.M. estimated that the events occurred during a one-hour period of time.

C.M. left the defendant's residence and immediately returned home. C.M. said she was so "high" on her way home that, "I couldn't hardly walk and I fell when I went out of his door." C.M. had to wait on the front porch of her apartment until Hastings and Hodge returned to the residence because the front door of the duplex was locked and she did not have a key. Afraid of getting into trouble, C.M. initially told Hastings that she had been in the backyard. When Hastings revealed that she had looked for C.M. in the backyard, C.M. confessed that she had been at the defendant's home and told Hastings what had occurred. C.M. gave Hastings the twenty-dollar-bill the defendant had placed in her jeans. The trio then went to the defendant's residence, and Hastings knocked on the door, which was answered by one of the defendant's sons. Hastings entered the residence and, finding the defendant coming out of the bathroom, loudly confronted him about the incident. Hastings threw the money at the defendant, returned home, and called the police.

The police arrived and began their investigation. They were unable to locate the defendant for several days. Later that night, Hastings, Hodge, and C.M. decided to drive to Nashville to pick up Martin but, due to car trouble, had to wait for Martin's return the next morning. When Martin arrived, she took C.M. to the emergency room at the Marshall Medical Center where Dr. Phillip Roberts performed a "rape kit" on C.M., sending the rape kit and C.M.'s panties to the Tennessee Bureau of Investigation (TBI) laboratory for testing. Although no semen or sperm was found on the vaginal swabs performed on C.M., both substances were found in the crotch area and near the rear waistband of the victim's panties.

The defendant was indicted on the following counts:
count one: rape of a child by digital penetration;
count two: rape of a child by penile penetration;
count three: aggravated sexual battery by the defendant's mouth on the victim's vagina;
count four: aggravated sexual battery by the defendant's hand on the victim's vagina;
count five: aggravated sexual battery by the defendant's hand on the victim's breast; and,
count six: casual exchange.

After trial, a jury in the Marshall County Circuit Court found the defendant not guilty of rape of a child but guilty of aggravated sexual battery on count one; guilty on count two; not guilty on count three; guilty on count four; guilty on count five; and guilty on count six. At the sentencing hearing, the trial court merged all of the defendant's convictions of aggravated sexual battery into the conviction of rape of a child, sentenced the appellant to twenty years incarceration in the Tennessee Department of Correction, and ordered service of one hundred percent (100%) of the defendant's sentence. The trial court also sentenced the appellant as a Range II offender to two years incarceration for the casual exchange conviction and ordered that sentence served concurrently with the sentence for rape of a child, resulting in a total effective sentence of twenty years. We now turn to the issues before us on appeal.

## II. Analysis
### A. Sufficiency of the Evidence

We begin by addressing the defendant's challenge to the sufficiency of the evidence sustaining his convictions of rape of a child and aggravated sexual battery.[2] On appeal, considerable weight is accorded to the verdict of a jury in a criminal trial. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This deference is given because the jury, as the trier of fact, must resolve all questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). Accordingly, as the prevailing party in the trial court, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Therefore, a jury conviction essentially removes the presumption of the appellant's innocence and replaces it with a presumption of guilt, requiring the appellant to carry the burden of demonstrating to this court why the evidence will not support the jury's findings. Tuggle, 639 S.W.2d at 914. To this end, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense in question beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

We will first examine the defendant's conviction of child rape as alleged in count two of the indictment. Tenn. Code Ann. § 39-13-522(a) (1997) provides that "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant . . . , if such victim is less than thirteen (13) years of age." Sexual penetration is defined as "sexual intercourse . . . or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7) (1997).

Specifically, the defendant was convicted of the rape of C.M. by "penile penetration." The testimony of the victim, C.M., constituted the bulk of the evidence against the defendant at trial. C.M. testified at trial that the defendant pushed her back onto the bed, removed her blue jeans and

---

[2] From the defendant's brief, it does not appear that he contests his conviction of casual exchange or the resulting sentence.

-4-

panties, and inserted his penis into her vagina. She knew that the defendant had inserted his penis "because it hurt worse" than the digital penetration. Additionally, C.M. asserted that she was twelve years old at the time of the offense. The jury could accredit C.M.'s testimony regarding these facts. As corroboration for C.M.'s testimony, Sharon Jenkins, a quality assurance manager for the TBI laboratory, testified that, while C.M.'s vaginal swabs did not contain semen or sperm, both semen and sperm were present on C.M.'s panties. Moreover, C.M. testified that the defendant gave her twenty dollars after the offense. Both Hastings and Hodges confirmed that, when they returned to C.M.'s house after searching for her, she told them about the defendant's actions and showed them the twenty dollars he had given her. Accordingly, the proof adduced at trial is sufficient to sustain the defendant's conviction of rape of a child. See State v. Steven Otis Nicely, No. 03C01-9805-CR-00174, 1999 WL 826029, at *5 (Tenn. Crim. App. at Knoxville, October 18, 1999); see also State v. Bobby B. Barrett, No. W1999-02002-CCA-R3-CD, 2000 WL 1840073, at *8 (Tenn. Crim. App. at Jackson, December 12, 2000), perm. to appeal denied, (Tenn. 2001).

We now turn to the defendant's convictions of aggravated sexual battery. "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant . . . [and] [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (1997). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). Additionally, we note that, "'[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. at (2). We will address each of the defendant's convictions of aggravated sexual battery separately.

First, the jury found the defendant guilty on count one of the indictment of the aggravated sexual battery of C.M. by "digital penetration." C.M. testified that, during the course of the evening, the defendant inserted his finger into her vagina and "pushed it in and out . . . [for] about five minutes." Additionally, as we earlier stated, C.M. testified that she was twelve years old at the time of this offense. This evidence supports the jury's finding that the defendant intentionally touched one of C.M.'s "intimate parts" and did so "for the purpose of sexual arousal or gratification." See State v. Alfred Lee Middleton, No. W1996-00022-CCA-R3-CD, 1999 WL 1531759, at *5 (Tenn. Crim. App. at Jackson, December 17, 1999); cf. State v. Anderson D. Curry, No. 02C01-9711-CR-00452, 1998 WL 376353, at *3 (Tenn. Crim. App. at Jackson, July 8, 1998).

On count four of the indictment, the jury found the defendant guilty of aggravated sexual battery by placing his hand on C.M.'s vagina over her blue jeans. C.M. testified that, after she and the defendant had smoked marijuana, the defendant pushed her back onto the bed and he "rub[bed] my private." Specifically, the following testimony occurred:

State: . . . He took his hand and placed it where?
C.M.: On my vagina.
State: Between your legs?
C.M.: Yes, sir.
State: Were your clothes at that point on or off?

C.M.: They were on.
State: This is over your clothing.  This is going to be over your blue
jeans; right?
C.M.: Yes, sir.

As noted earlier, "the jury could reasonably construe that the defendant intentionally touched the victim's [vagina] for the purpose of sexual arousal or gratification." State v. Michael A. Miller, No. E2000-00930-CCA-R3-CD, 2001 WL 483410, at *6 (Tenn. Crim. App. at Knoxville, May 8, 2001). Therefore, this testimony is sufficient to sustain the appellant's conviction of aggravated sexual battery on count four of the indictment.  See State v. David Calloway, No. 03C01-9808-CR-00324, 1999 WL 1059712, at *3 (Tenn. Crim. App. at Knoxville, November 23, 1999).

Finally, the defendant contests his conviction of aggravated sexual battery on count five of the indictment, which alleged that the defendant "plac[ed] his hand on the victim's breast." C.M. testified that, after the defendant touched her genitals over her blue jeans, he then unsnapped her bra and began rubbing her right breast.  As this court has previously noted, "the jury could have drawn on common knowledge to reasonably infer that the defendant rubbed the victim's breast[] for the purpose of sexual arousal or gratification." State v. Jack Warren Emert, Jr., No. 03C01-9802-CC-00074, 1999 WL 512029, at *2 (Tenn. Crim. App. at Knoxville, July 21, 1999).  This testimony is sufficient to sustain the defendant's conviction on count five. See State v. Smith, 42 S.W.3d 101, 106 (Tenn. Crim. App. 2000), perm. to appeal denied, (Tenn. 2001).

The defendant specifically argues that the jury should not have believed the testimony of C.M. because she is "an admitted liar."  The defendant alleges that the State's attorney interrupted C.M.'s testimony because he "knew [C.M.] was committing perjury in this case."  However, from our examination of the record, we find no indication that C.M. was committing perjury when the State, while conducting the direct examination of C.M., emphasized to her the importance of telling the truth while testifying.

The defendant also argues that, because C.M. related a contradictory version of events to Officer Beth Rhoten of the Lewisburg City Police Department, the rule of cancellation applies; accordingly, the defendant argues that C.M.'s testimony must be stricken and, as a result, there is insufficient circumstantial evidence remaining to sustain his convictions.  However, the defendant misconstrues the rule of cancellation.  In Tennessee, "contradictory statements by a witness in connection with the same fact cancel each other." State v. Matthews, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993).  Nevertheless, "[t]his rule of cancellation applies only when inconsistency in a witness' testimony is unexplained and when neither version of [her] testimony is corroborated by other evidence." Id. (citing Taylor v. Nashville Banner Pub. Co., 573 S.W.2d 476, 483 (Tenn. App. 1978)).

C.M. told Officer Rhoten that the defendant forcibly held her down and kept his hand over her mouth during the incident.  She also stated that she had kicked at the defendant during the offense.  C.M. explained at trial that she told this version of events because she was afraid of getting into trouble if her sister realized that she had gone to the defendant's home.  Additionally, C.M.

-6-

testified that the information she gave Officer Rhoten regarding the manner in which the defendant touched her during the incident was accurate. The defendant argues that this testimony is contradictory and subject to cancellation. However, the reason for the inconsistency in C.M.'s statements was obviously explained by C.M.'s testimony that she was afraid of getting into trouble. See State v. Melvin Lewis Peacock, No. 01C01-9704-CR-00118, 1998 WL 380006, at **5-6 (Tenn. Crim. App. At Nashville, July 9, 1998). Additionally, the statements C.M. made to Officer Rhoten are not sworn testimony. State v. Michael Dwayne Edwards, No. W1999-00591-CCA-R3-CD, 2000 WL 674671, at *3 (Tenn. Crim. App. at Jackson, May 16, 2000), perm. to appeal denied, (Tenn. 2000). Prior inconsistent statements by a witness that are not sworn testimony merely raise credibility issues for the trier of fact to resolve. See State v. Anand Franklin, No. 01C01-9807-CR-00282, 1999 WL 482399, at *4 (Tenn. Crim. App. at Nashville, July 9, 1999); cf. State v. Banes, 874 S.W.2d 73, 78-79 (Tenn. Crim. App. 1993). Moreover, additional evidence in the form of sperm and semen found on her panties corroborated C.M.'s testimony that she was sexually assaulted by the defendant. The jury was free to accredit C.M.'s testimony and find the defendant guilty of the charged offenses. This issue is without merit.

## B. Merger

At the sentencing hearing, the trial court found that "[a]ll aggravated sexual batteries will merge into the rape of a child." On appeal, the State argues that the trial court erred in merging the defendant's convictions of aggravated sexual battery into the rape of a child conviction. The defendant contends that the trial court did not err in merging his convictions.

The trial court stated that "[a]ll of the sexual batter[ies] under [State v. Anthony, 817 S.W.2d 299 (Tenn. 1991)], the Court finds that those charges would merge one with the other."[3] It appears from the record that the trial court concluded that merger was required because the aggravated sexual batteries were "essentially incidental" to the rape of a child. Anthony, 817 S.W.2d at 307. However, our supreme court has specifically held that

> the "essentially incidental" test, as developed in Anthony and its progeny, is not helpful in the context of sexual offenses because each separate sexual act "is capable of producing its own attendant fear, humiliation, pain, and damage to the victim."

State v. Barney, 986 S.W.2d 545, 548 (Tenn. 1999) (quoting State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996). The Barney court went on to adopt the test articulated in People v. Madera, 282 Cal.Rptr. 674, 680 (Cal. Ct. App. 1991). Specifically, the court explained that,

> if the act in question directly facilitates or is merely incidental to the accompanying sexual conduct (such as, for example, applying lubricant to the area of intended copulation), convictions for both acts would be barred. If, however, the act in question is "preparatory"

---

[3] Although this statement seems to indicate that the trial judge only merged the aggravated sexual battery convictions with each other, the court's earlier statement, the judgments of conviction, and the complete transcript of the sentencing hearing reflect that the trial court merged the defendant's convictions of aggravated sexual battery into the rape of a child conviction on count two.

only in the sense that it is intended to sexually arouse either the victim or the perpetrator, separate convictions are not barred.

Barney, 986 S.W.2d at 548 (citation omitted). The court further detailed that several factors are relevant in determining whether an act is "directly facilitative" or "merely preparatory," namely: "temporal proximity," "spatial proximity," "occurrence of an intervening event," "sequence of the acts," and "the defendant's intent as evidenced by conduct and statements." Id. at 548-549. In applying this test, the Barney court found no due process violation in letting separate convictions stand where the defendant rubbed the victim's penis (aggravated sexual battery) and the defendant performed fellatio upon the victim (rape of a child). Id. at 549.

In the instant case, we must conclude that the trial court improperly merged the defendant's conviction of aggravated sexual battery by digitally penetrating the victim into his conviction of rape of a child. C.M. related that, after removing her blue jeans and panties, the defendant digitally penetrated her for approximately five minutes. At the conclusion of the digital penetration, the defendant told C.M. "I'm going to get a little dirty now." The defendant then pulled down his pants and inserted his penis into her vagina. This action indicates that the defendant formed a new intent to violate the victim and did so by differing forms of penetration. See Barney, 986 S.W.2d at 548-549. As our supreme court stated in Phillips, "each of the above-described acts is . . . a discrete type of sexual penetration . . . requir[ing] a purposeful act on the part of the perpetrator." 924 S.W.2d at 664-665.

We also conclude that the trial court should not have merged the defendant's convictions of aggravated sexual battery by fondling the victim's breast and by touching the victim's genitals through her blue jeans into the defendant's conviction of rape of a child. The defendant contends that all of the actions were "foreplay leading to sex" and therefore "all previous actions by [the defendant] were designed to lead to sexual intercourse," making the incident one continuous offense. However, as the supreme court noted in Barney, separate convictions are not prohibited when the act is only "intended to sexually arouse either the victim or the perpetrator." 986 S.W.2d at 548. Moreover, "the [defendant] could have accomplished the [rape of a child] without touching the victim's breast." State v. Binion, 947 S.W.2d 867, 872 (Tenn. Crim. App. 1996). Therefore, we find that the trial court impermissibly merged these convictions of aggravated sexual battery into the conviction of rape of a child.

However, in light of the supreme court's recent decision in State v. Robert Derrick Johnson, No. M1998-00546-SC-R11-CD, 2001 WL 949978 (Tenn. at Nashville, August 22, 2001) (publication pending), we conclude that the trial court should have merged the defendant's convictions of aggravated sexual battery by fondling the victim's breast and by touching her genitals through her blue jeans into his conviction of aggravated sexual battery by digital penetration. In Johnson, after examining two separate convictions of aggravated sexual battery, Justice Drowota explained that "the element "sexual contact" was proven . . . by the victim's testimony that the defendant intentionally touched her breast and her groin area for the purpose of sexual arousal or gratification." Id. at *4 (emphasis in original). In deciding that aggravated sexual battery may consist of touching more than one of the victim's "'intimate parts,'" the court found that the evidence

supported only one conviction of aggravated sexual battery. Id. The court concluded that, "[i]f the entire instance of sexual contact occurs quickly and virtually simultaneously, then only one offense has occurred, even if more than one touching has occurred." Id. In distinguishing Johnson from Phillips, the court emphasized that "[t]he nature of the act is touching . . ., whereas the proof in Phillips showed separate acts of penetration." Johnson, No. M1998-00546-SC-R11-CD, 2001 WL 949978, at *5. Moreover, as the court noted in Johnson, "'[i]t is apparent from the evidence that all this happened quickly and virtually simultaneously.'" Id. at *3. Accordingly, we find that the trial court should have merged the defendant's convictions on counts one, four, and five into one conviction of aggravated sexual battery but should not have merged them with the defendant's conviction of rape of a child on count two.

### C. Sentencing

Initially we note that, because the defendant's convictions were improperly merged, we must remand to the trial court for resentencing. However, as guidance to the trial court, we will briefly address the following issues raised by the State.

The State argues that the conviction forms submitted by the jury clearly indicate that on count one of the indictment, while the defendant was found not guilty of rape of a child, the jury nonetheless found the defendant guilty of the lesser-included offense of aggravated sexual battery by the defendant's digital penetration of the victim. However, the judgment form included in the record before this court simply indicates that the defendant was found not guilty of any crime on count one. On remand, we instruct the trial court to correct the judgment on count one to reflect the conviction of aggravated sexual battery.

Additionally, the State complains that the judgment form on count two recording the conviction of rape of a child classifies the defendant as a "violent offender" and not as a "child rapist." The State contends that this error could potentially impact the percentage of the sentence the defendant must serve. A violent offender must serve one hundred percent (100%) of his sentence, but may earn good time credits, which could reduce his sentence up to fifteen percent (15%). Tenn. Code Ann. § 40-35-501(i)(3) (1997). In contrast, a child rapist must serve one hundred percent (100%) of his sentence with no potential for earning good time credits. Tenn. Code Ann. § 39-15-523(c) and (d) (1997). As the statute mandates that a child rapist must serve one hundred percent (100%) of his sentence with no potential sentence reduction, we instruct the trial court on remand to correct this error in the judgment. See Lloyd Paul Hill v. State, No. M2000-01428-CCA-R3-PC, 2001 WL 1006050, at **4-5, (Tenn. Crim. App. at Nashville, August 30, 2001); State v. Delbert Lee Harris, No. M1999-01239-CCA-R3-CD, 2000 WL 804669, at *3 (Tenn. Crim. App. at Nashville, June 23, 2000).

The State also argues that the trial court erred in failing to consider the statutorily mandated enhancement factor set forth in Tenn. Code Ann. § 39-13-522(c) in sentencing the defendant for the rape of a child conviction. This court reviews challenges to the length, range, or manner of service of a sentence de novo. Tenn. Code Ann. § 40-35-402(d) (1997). Moreover, if the record reveals that the trial court properly considered the sentencing principles and all relevant facts

and circumstances, this court will review the trial court's determinations with a presumption of correctness. Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Regardless, the burden is on the State as the appealing party to demonstrate the impropriety of the defendant's sentences. Tenn. Code Ann. § 40-35-402, Sentencing Commission Comments.

In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (2000 Supp.); see also Ashby, 823 S.W.2d at 168.

The State argues that the trial court was required to consider, as an enhancement factor, that "the defendant caused the victim to be mentally incapacitated or physically helpless by use of a controlled substance." Tenn. Code Ann. § 39-13-522(c). Conversely, the defendant argues that the trial court did consider this enhancement factor but gave it little weight. The record does not reflect that the trial court considered this enhancement factor; therefore, on remand, the trial court must consider this enhancement factor in sentencing the defendant.

In a footnote, the State mentions that the trial court should have also considered that the offenses of rape of a child and aggravated sexual battery involved a victim and were committed to gratify the defendant's desire for pleasure or excitement and that the defendant abused a position of private trust in the commission of the offenses. Tenn. Code Ann. § 40-35-114(7) and (15). While this court does not encourage the raising of issues in a footnote, we will nonetheless briefly examine these issues.

First we address whether the defendant "abused a position of public or private trust" in the commission of the offenses. Tenn. Code Ann. § 40-35-114(15). This court has previously observed that, "[t]he existence of a position of trust 'does not depend on the length or the formality of the relationship.' Instead, the court 'should look to see whether the offender formally and informally stood in a relationship to the victim that promoted confidence, reliability, or faith.'" State v. Griffis, 964 S.W.2d 577, 603 (Tenn. Crim. App. 1997) (quoting State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996)). The evidence shows that, although the defendant was a neighbor of the victim and had occasionally visited in the home, he was not a close friend of the victim or her family. There is nothing in the record from which we can conclude that the defendant occupied a position that inspired "'confidence, reliability, or faith.'" Id. Accordingly, we conclude that the trial court correctly refused to apply this enhancement factor.

The State also suggests that the trial court should have found that "[t]he offense[s] involved a victim and [were] committed to gratify the defendant's desire for pleasure or excitement." Tenn. Code Ann. § 40-35-114(7). Generally, in order to sustain a defendant's conviction for aggravated sexual battery, the State must prove that a touching was "for the purpose of sexual

arousal or gratification;" therefore, enhancement factor (7) may not be applied to an aggravated sexual battery conviction. Tenn. Code Ann. § 39-13-501(6); see also Kissinger, 922 S.W.2d at 489. Accordingly, we conclude that, on remand, the trial court may not apply enhancement factor (7) to the defendant's conviction of aggravated sexual battery. However, our supreme court has previously stated that "enhancement factor (7), though essential to a finding of sexual battery or aggravated sexual battery, is not an element of rape or aggravated rape and, therefore, may be used as an enhancement factor in appropriate cases." Kissinger, 922 S.W.2d at 489. In the instant case the evidence shows that, after fondling the victim at some length and prior to penetrating her vagina with his penis, the defendant warned the victim, "I'm going to get a little dirty now." Additionally, after the act, the defendant gave the victim twenty dollars and told her "thanks." We conclude that there is sufficient evidence in the record to warrant the application of this enhancement factor to enhance the defendant's sentence for rape of a child. See Griffis, 964 S.W.2d at 602; State v. David L. McClure, No. 01C01-9505-CR-00145, 1997 WL 211254, at *9 (Tenn. Crim. App. At Nashville, April 30, 1997).

### III. Conclusion

Based upon the foregoing, we conclude that the conviction on count one of aggravated sexual battery and on count two of rape of a child should not have merged; however, the convictions on counts one, four, and five should have merged with each other but remained independent of the conviction on count two. In short, there should be one conviction of aggravated sexual battery and one conviction of rape of a child. Accordingly, we remand this case to the trial court for resentencing and for correction of the judgments as set forth in this opinion.

_____
NORMA McGEE OGLE, JUDGE

-11-