# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 27, 2006

## STATE OF TENNESSEE v. MARVIN D. NANCE

### Appeal from the Criminal Court for Greene County
### No. 04CR095   James Edward Beckner, Judge

_____

### No. E2005-01623-CCA-R3-CD - Filed February 23, 2007

_____

The Defendant, Marvin D. Nance, was convicted of aggravated sexual battery, and the trial court sentenced him to ten years in the Department of Correction.  On appeal, the Defendant contends that: (1) the State failed to elect a set of facts upon which it was relying to sustain his convictions; (2) the evidence is insufficient to sustain his conviction; (3) the trial court erred by not granting him a mistrial after the State made allegedly improper argument; (4) the State committed a discovery violation; and (5) the trial court erred when it sentenced him.  Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Greg W. Eichelman and Robert Russell Mattocks, Morristown, Tennessee, for the appellant, Marvin D. Nance.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; C. Berkeley Bell, District Attorney General; Cecil Mills and Amber DePriest, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION
### I.  Facts

This case arises from the Defendant's conviction for the aggravated sexual battery of the victim, RLT,[1] who was a person less than thirteen years of age at the time of the offense.  At the Defendant's trial for this offense, the following evidence was presented:  Ralph W. Roderick, a detective with the Greene County Sheriff's Department, testified that he was working in

---

[1]It is the policy of this Court to refer to minor victims of sexual assault by their initials only.

December 2003 when he became involved in this case. He said that Patricia Price[2] filed an offense report, which was brought to him. The detective testified that he spoke with Price about the report, and he also interviewed the victim. Detective Roderick spoke with Price and informed her that she could tape record any conversation to which she was a party. The next day, Price brought in a tape recording of a conversation that she had the night before, and the Detective referred the case to the Department of Children's Services.

Patricia Ann Price testified that she was working the third shift from 11:00 p.m. until 7:30 a.m. at her job in December 2003. She said that at that time she was married to the Defendant and that they lived in the same house with her three children, none of whom were the Defendant's biological children. Also living in the home were the Defendant's grown daughter, her husband, and their five children. Price testified that her daughter, RLT, was eleven years old in December 2003. She recalled that, on December 16, 2003, she and the Defendant had gone to a Christmas party at a restaurant where she previously worked. When they returned, at around 2:00 p.m., she lay down because she had to be at work that night. Price said that the Defendant told her then that RLT had not been feeling well the night before, and RLT stayed home from school that day. The Defendant told Price that he had rubbed "Vicks" on her, and Price asked him where he had rubbed it on her. The Defendant told her that he rubbed the Vicks on RLT similarly to the way that he rubbed it on Price when she was sick. Price asked the Defendant why he would rub Vicks on RLT when there was another female living in the home who could have done so. The Defendant said that there was nothing sexual in the act.

Price said that the Defendant then left the room, and she spoke with her daughter. After her conversation with RLT, she asked the Defendant if he had been "playing" with her daughter's breasts, and the Defendant responded that he had. He said that he was glad that Price knew and that he had felt guilty. She said that she asked him how long this had been going on, and he said that he did not know. She then asked the Defendant if it happened twice, and he said yes. She asked him if it happened more than ten times, and he said "I can't tell you. . . . I don't know."

Price said that the Defendant packed and left the home. She said that she told her sons that the Defendant would not be back, and then, on December 23rd, she moved "across the country." Price testified that she did not report this to authorities at the time because the Defendant's children and grandchildren were still living in the home, but she reported the incident after the holidays. Later, she contacted the Defendant and asked to speak with him alone. When they spoke alone, Price tape recorded their conversation, during which the Defendant admitted that he touched RLT's breasts. Price said that the Defendant did not offer an explanation for his actions, but he stated that the touching started when RLT sat in his lap and leaned over and her breast went in his hand. The Defendant told her that he and RLT were both to blame for this interaction and that Price was also to blame because she was not giving him

---

[2]The record reflects that Patricia Price was married to the Defendant at the time of this offense, and, while the two were married, her name was Patricia Nance.

enough sexual affection. This tape was played for the jury, and a transcript of the tape was also provided to aid them.

On cross-examination, Price testified that, during the course of her relationship with the Defendant, she had told the Defendant that RLT had been molested before and that she had also been molested when she was younger. She testified that she did not tell the Defendant that, because of RLT's previous molestation, she would not believe his version of events if anything occurred between the two. She agreed that this incident occurred when RLT had a chest cold that later turned into pneumonia. Price conceded that the Defendant did not know that she was tape recording their conversation and that the two had had other conversations on this topic. Price said that one such conversation occurred when the Defendant showed up at her house after she had moved. During this conversation, the Defendant told her that the incidents were RLT's fault and Price's fault, but Price did not believe him.

On redirect examination, Price said that when the Defendant rubbed Vicks on her he would rub it on her chest, on top of her breasts, under her breasts, and on her back. She explained that Vicks is a salve that is placed on the chest of someone who has a cold to help open the airways.

RLT testified that she was born on July 9, 1992, and that she used to live with the Defendant when he was her step-father. She said that she, her brothers, her mother, the Defendant, his daughter, and his daughter's family, all shared a two bedroom trailer, and she slept in the living room by herself. She testified that her mother worked at night and that the Defendant would take care of her when her mother was at work. RLT testified that she recalled contracting pneumonia when she was still living with the Defendant. She said that he put Vicks on her chest, and she had a talk with her mother about the Defendant around that time. She told her mother that the Defendant had been touching her breasts when her mother was gone. RLT explained that the Defendant would touch her with his whole hand, and she demonstrated for the jury how he cupped her breast. She said that the Defendant's actions made her feel "[n]ot really comfortable," and she asked him to stop. RLT testified that the Defendant would not listen, and he told her that he loved her in a whisper.

On cross-examination, RLT agreed that this incident occurred before the Defendant's mother died, which was in early December, and that her mother was at the hospital with the Defendant's mother when this incident occurred. On redirect examination, RLT testified that this incident occurred a couple of days before the Defendant moved out of their trailer. She said that the Defendant had touched her while they were in the bathroom and in the living room. During later examination by the Defendant's counsel, RLT testified that the Defendant never told her not to tell anyone about the touching, and he did not tell her to keep it a secret.

The Defendant testified that he was sixty years old and that he had a stroke in February 2004. He recalled that his ex-stepdaughter, JM, and his granddaughter, BN, came over to his house for the weekend when Price had to work. When the girls arrived they sat on either side of him on the couch, and RLT came into the room and then got "mad and jealous" because there was no place for her to sit. He said that all three girls went back to play, and when bedtime came

3

he put JM and BN to bed. He then went back into the living room and sat down on the couch to watch a movie and wait until Price came home from work. The Defendant testified that RLT came into the room and sat down on his lap. He told her that she needed to get up, and she said that she wanted to give him a hug. The Defendant said that he told RLT to give him a hug and then get up.

The Defendant testified that RLT told the Defendant to close his eyes, and when he did she put his head between her breasts and "hung on for dear life." He said that he pushed her away and said "[RLT], Get up. . . . This ain't working, this can't happen. . . . I love your mama, I'm married to your momma, I love you kids, you're my daughter." He said that this behavior did not happen again for two weeks. Then, one day, RLT came home from school and pretended that she was getting something out of her backpack. She then told the Defendant to close his eyes because she had a surprise for him. When his eyes were closed, she put his hands on her breasts. He said that he opened his eyes and jerked his hands away and told her "[RLT] this ain't right, this shouldn't happen." The Defendant said that he did not tell Price because Price had previously told him that RLT had been molested, and she would believe her kids first and not him if something like this were to ever happen.

The Defendant described another incident when RLT put her breast in his fingers, and, after he jerked away from her, he told her, "This had better not happen [any] more. . . . I don't like it." The Defendant testified that, on Thanksgiving Day, he got word that his mother was deathly ill in the hospital. While the Defendant and Price were visiting his mother in the hospital, she asked Price to stay with her in the hospital. Price agreed and asked the Defendant to take the children home. He agreed, and, because his daughter and her husband were there with their sick child, he slept on the couch in the living room. He testified that RLT slept fully clothed in a recliner in the living room, and, during the night, she woke him up because she was coughing. The Defendant said that his daughter was sleeping, so he went and got the Vicks, and RLT took off her shirt and bra. The Defendant said that he put the Vicks on her chest area, but he never touched RLT's breasts. He then told RLT to put her bra and shirt back on, and she went back to sleep in the recliner.

The Defendant said that, when he awoke on December 16th, Price asked RLT if the Defendant had been touching her breasts, and RLT said "yeah." The Defendant said that he was shocked. He decided that the best thing for everyone involved would be for him to leave the house. He later learned that Price was moving with her children out of the trailer, and he went to help them move. After Price had moved, he spoke with her on the telephone, and, during these conversations, Price told him that if the Defendant would say that he was the guilty one because he was the adult then they could get family counseling and remain together. The Defendant said that he agreed because he loved Price and her family.

He said that, one day, Price asked to speak to him alone in her car, and he agreed. He said that he knew that Price had never received counseling for her own molestation, and she never got RLT counseling when she was previously molested. The Defendant testified that, therefore, his goal was to get them to family counseling, and he knew that he would have to say that he was the guilty one in order for this to happen. The Defendant said that he lied to Price

4

during the tape recorded conversation.  He said that, while there was physical contact between him and RLT, he did not initiate the contact, and the contact was not for sexual gratification.  The Defendant then recalled one other incident where he told RLT that he did not like what was happening and that he was going to put a stop to it.  He said that RLT responded that if he did she would tell her mother.  The Defendant added that he had never touched RLT in an inappropriate manner.

On cross-examination, the Defendant could not remember whether his wife was working weekends during the December when this incident occurred.  He said that, on December 16, 2003, he had a conversation with his wife about this incident, and he tried to explain to her that his hands came into contact with RLT's breasts but that the touching was not initiated by him.  The Defendant said that he also told her about rubbing Vicks on RLT, but he insisted that his hands never touched RLT's breasts.  The Defendant agreed that, on the tape recording of his conversation, Price said that RLT did not understand because she was only eleven, and the Defendant responded "I know."  The Defendant also agreed that he told Price that "a lot of it was due to the fact that I hadn't had any for a while either."  He said that he did not know whether this comment referred to sex, and he agreed that maybe that comment meant that "it was due to the fact that [he] hadn't gotten any help for a while . . . ."

Based upon this evidence, the jury found the Defendant guilty of aggravated sexual battery, and the trial court sentenced him to eight years in prison.  It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the State failed to elect a set of facts upon which it was relying to sustain his convictions; (2) the evidence is insufficient to sustain his conviction; (3) the trial court erred by not granting him a mistrial after the State made allegedly improper argument; (4) the State committed a discovery violation; and (5) the trial court erred when it sentenced him.

### A.  Election of Facts

The Defendant first contends that the State failed to elect a set of facts upon which it was relying for a conviction by not choosing the correct date of the incident.  He asserts that the evidence proved that the Defendant rubbed Vicks on RLT near Thanksgiving and not in December.  The State's attorney in her opening statement mentioned multiple instances of sexual contact between the Defendant and the victim.  At the close of this opening statement, the trial court stated in a jury out proceeding:

> Your opening statement presented me with a tremendous dilemma.  The [D]efendant is charged with one act in one count.  You told the jury that you were going to prove several acts.  The jury has to have one specific act to be able to hang its hat on.  They have to return a verdict that everyone agrees upon is the same act.  If you prove several incidences in your proof, and there's not a specific

5

verdict, there's just that general verdict, then there's no meeting of the minds of the jurors as to any one specific incident.

The State then told the trial court that the specific incident that it would be relying upon occurred on or about December 14th and that it involved the Defendant rubbing Vicks on the victim's chest.

When the jury returned to court, the trial court stated:

There's something I need to tell you and that's the reason I had that hearing outside your presence, because when I heard the state say that there were multiple offenses, there's only one charge and one count of the indictment, and our Supreme Court has held that you have to focus one, we cannot present several incidents to you and then you come back with a verdict about one offense on one count because there would technically be no meeting of the minds, particularly on one specific incident. So I have gotten the state to give me the specifics on the incident that you're going to consider as to whether the [D]efendant is guilty or not guilty of the offense, and understanding that it's difficult to pinpoint these things to an exact time or place sometimes but I have gotten this, and this will be on your verdict sheets that you have to take with you, but I want you to understand ahead of time what you're looking at. It was an alleged incidence of conduct that happened on either December 13th of 2003 or December 14th of 2003 in the living room at the home at a time when the [D]efedant was alleged to have been putting Vicks salve on the chest of the alleged victim. That'll be repeated, and it'll be in writing on your verdict sheets, and that you have to come to a hundred percent meeting of the minds on, that what he is charged with doing happened at that time and no other time. . . . [Y]ou may find other things happened or you may not, or you may find that that happened or may not, but that is the only incidence that he can be convicted of in this case because he's only charged with one offense in one count.

The Tennessee Supreme Court "has consistently held that the prosecution must elect the facts upon which it is relying to establish the charged offense if evidence is introduced at trial indicating that the defendant has committed multiple offenses against the victim." State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001) (citing State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993)). "The election requirement safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same evidence." Johnson, 53 S.W.3d at 631 (citing Brown, 992 S.W.2d at 391). A jury's verdict is not unanimous when the jurors find the same elements of a particular crime based on different facts and offenses; the jurors must "deliberate and render a verdict based on the same evidence." Johnson, 53 S.W.3d at 631. "[T]here should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution." State v. Brown, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). The Tennessee Supreme Court

6

explained that "[a] defendant's right to a unanimous jury before conviction requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on different offenses in evidence." Kendrick, 38 S.W.3d at 568 (quoting Shelton, 851 S.W.2d at 137). The requirement of election and a jury unanimity instruction exists even though the defendant has not requested them. Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). Failure to elect offenses when the proof so requires constitutes plain error and will result in a reversal of the conviction, unless it is harmless beyond a reasonable doubt. See State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000).

In making an election, the State is not required to identify the particular date of the chosen offense, as the time of the offense is often immaterial. Shelton, 851 S.W.2d at 137. Any description that will identify the chosen offense will suffice. Id. at 138. Proof of the specific date of an offense is not, of course, a statutory element of an offense. Rather, the identification of, and distinction among, alleged incidents in multiple sex offense cases is required primarily to ensure unanimity of a verdict. State v. Jones, 953 S.W.2d 695, 697 (Tenn. Crim. App. 1996); State v. Johnny Lee Hines, No. 01C01-9709-CC-00405, 1999 WL 33107, at *4 (Tenn. Crim. App., at Nashville, Jan. 27, 1999), *no Tenn. R. App. P. 11 application filed*. Thus, with regard to the election of offenses, the standard for sufficiency of the evidence applies to the designation of offenses as though it were an element of the offenses. Hines, 1999 WL 33107, at *4 Not only must the State's election identify and distinguish offenses sufficiently to allow the trier of fact to render discrete and unanimous verdicts on each, the State must obviously support this election with evidence sufficient for a reasonable trier of fact to find that the offenses occurred as elected beyond a reasonable doubt. Id.

In the case at bar the State, at the suggestion of the trial court, elected an offense based upon date and upon other surrounding circumstances. The State elected that the offense occurred on December 13th or 14th and that it occurred when the Defendant rubbed Vicks salve on the victim's chest. The offense must be proven in accordance with the election, i.e., to have occurred on that date and under those circumstances. See id. If a jury is allowed to convict without specific evidence supporting the election, then the election is superficial and meaningless. We conclude that the State's election satisfied the election requirement, and we turn now to address whether the evidence presented at trial supports the offense as elected.

## B. Sufficiency of the Evidence

The Defendant next contends that the evidence presented is insufficient to support his conviction. Specifically, he asserts that his rubbing Vicks Vapor Rub on RLT was not "an instance of sexual battery, but rather the application of necessary medicine." When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

7

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). It also should not substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Aggravated sexual battery is the "unlawful sexual contact with a victim by the defendant" when the victim is less than thirteen years of age. Tenn. Code Ann. § 39-13-504(a)(4) (2003). Sexual contact is defined as "the intentional touching of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (2003). Further, in the case under submission, because the State elected facts that included that this offense occurred on December 13th or 14th, the evidence must prove that this offense occurred in accordance with the facts that they elected to support this offense.

When the evidence is viewed in the light most favorable to the State, it proves that RLT lived with the Defendant and her mother. One night, while her mother was away, the Defendant rubbed Vicks salve on RLT's chest, including her breasts. RLT spoke with her mother, Price, about this incident, and Price confronted the Defendant. The Defendant admitted that he had "played" with RLT's breasts. Later, during a tape recorded conversation, the Defendant again admitted that he touched RLT's breasts. The Defendant moved out of the RLT's home on December 16, 2006, and RLT testified that this incident occurred a "couple" of days before that date. We conclude that this evidence is sufficient for a rational trier of fact to find the essential

8

elements of the crime beyond a reasonable doubt. The Defendant is not entitled to relief on this issue.

## C. Denial of Mistrial

The Defendant next contends that the trial court erred twice when it failed to "call a mistrial." The Defendant contends that the trial court should have declared a mistrial following the prosecutor's opening statement. The determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002); State v. Millbrooks, 819 S.W.2d 441, 443 (Tenn. Crim. App. 1991). "The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996). A trial court should grant a mistrial only when it is of "manifest necessity." Id.; Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). "In other words, a mistrial is an appropriate remedy when a trial cannot continue, or a miscarriage of justice would result if it did." State v. Land, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000) (citing State v. McPherson, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994)). The burden of establishing the necessity for mistrial lies with the party seeking it. Williams, 929 S.W.2d at 388. No abstract formula should be mechanically applied in making this determination, and all circumstances should be taken into account. State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993).

The Defendant contends that the trial court should have declared a mistrial based upon the prosecutor's opening statement. The statement about which he complains was as follows:

> [Assistant Attorney General:] And you're going to hear [the victim] testify today. [The victim] is going to tell you herself what happened. She's going to tell you that he would come and touch her breasts. She told him to stop, and he did not stop.
>
> And we can't tell you the day that this started. We can't tell you how many times it happened. We can tell you that it happened more than once, and probably tell you that it happened more than twice. And we can tell you the day that it stopped.

The Defendant recognizes that the trial court held a hearing outside the presence of the jury after this statement and then instructed the jury on the facts that the State had elected to support the offenses that it was prosecuting. The Defendant asserts, however, that the curative instruction was inadequate and that this statement improperly prejudiced the jury.

We are unable to find "manifest necessity" for a mistrial based on the prosecutor's comments. The prosecutor was attempting to tell the jury what she expected the proof to show, and, outside the presence of the jury, the trial court clarified the facts upon which the State was seeking to rely for the Defendant's prosecution. As we noted above, the trial court then carefully

9

and thoroughly instructed the jury about the State's election and the requirements that it must meet before the jury could properly convict the Defendant. A jury is presumed to follow a trial court's instructions. Millbrooks, 819 S.W.2d at 443. Accordingly, we do not believe the prosecutor's comments caused the jury to convict the Defendant based on other alleged sexual encounters with the victim. Furthermore, the Defendant presented evidence that the victim placed her breasts on his hands on multiple occasions and that he never inappropriately touched her and was angry with her for this behavior. In response to his anger, the Defendant asserted, the victim told her mother that the Defendant inappropriately touched her. In his tape-recorded statements, he said that he had touched the victim's breasts on multiple occasions. Under these circumstances, we do not think that the trial court abused its discretion when it determined that there was no "manifest necessity" for a mistrial. The Defendant is not entitled to relief on this issue.

### D. Discovery

The Defendant next contends that the State committed a violation of Brady v. Maryland, 373 U.S. 83 (1963). The Defendant claims that the State did not provide him information regarding the specific facts, namely the Vicks Vapor Rub incident, upon which the State relied to support the charge of aggravated sexual battery. The Defendant cites no case law regarding exculpatory evidence and states that "there is little argument that can presently be made in relation to the argument that this is a matter that should be considered in review of this case." The Defendant avers that the trial court should have reviewed the District Attorney's case file for discoverable material, and, because it did not, he asks this Court to review the District Attorney's file. The State counters that there is no evidence to prove a violation of Brady because the State did not withhold any exculpatory evidence.

At the hearing on the Defendant's motion for new trial, the Defendant raised this issue, and the trial court found:

> There's really no factual basis to believe that there's been a Brady violation, that there are any exculpatory materials in the State's file that have not been provided. However, if the appellate court would wish at some point to review the State's file because of the particular circumstances of this case -- I have no reason myself to believe that I should make an in camera inspection of the file, but I would order the State to copy and seal the file and put it in the appellate record.

The State's file has been included in the record on appeal.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to establish a due process violation under Brady, four prerequisites must be met:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information, whether requested or not);
2. The State must have suppressed the information;
3. The information must have been favorable to the accused; and
4. The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995). The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence. Id.

We first note that the Defendant does not allege a Brady violation. He asserts that the State failed to provide him specific facts about the Vicks Vapor Rub incident, which is arguably not at all exculpatory. Rather, it appears that the information that the Defendant sought could have been obtained by a pretrial request for a Bill of Particulars, which the Defendant did not make.

Further, pursuant to Rule 36 of the Tennessee Rules of Appellate Procedure, this Court "shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires" and we "may grant any relief, including the giving of any judgment and making of any order; provided however, relief may not be granted in contravention of the province of the trier of fact." Tenn. R. App. P. 36(a). The issue of whether it was necessary to review the State's file to determine if a Brady violation occurred is clearly within the province of the trial court. Here the trial court found that this action was unnecessary, and we conclude that the trial court's finding was not in error.

Finally, we have reviewed the State's file that was submitted as a supplement to the appellate record for any alleged Brady violation. The file contains no such information. For all of these reasons, the Defendant is not entitled to relief on this issue.

### E. Sentencing

The Defendant next contends that the trial court erred when it found that there were two applicable enhancement factors. When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v.

Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210(b) (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

At the time of the Defendant's offense the law mandated that, in the absence of enhancement and mitigating factors, the presumptive length of a sentence for a Class B felony was the minimum sentence in the statutory range.[3] Tenn. Code Ann. § 40-35-210(c). In order to determine the appropriate range of a sentence, the trial court shall consider, among other things, enhancing and mitigating factors. Tenn. Code Ann. § 40-35-210(b)(5). Whenever the court imposes a sentence, it shall place on the record either orally or in writing what enhancement or mitigating factors it found, if any, as well as findings of fact as required by other sections of the Tennessee Code. Tenn. Code Ann. § 40-35-210(f). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. State v. Carter, 908 S.W.2d 410, 412 (Tenn. Crim. App. 1995); State v. Shelton, 854 S.W.2d 116, 122 (Tenn. Crim. App. 1992). The trial record must contain specific findings of fact to support the sentence, as well as any enhancement or mitigating factors used to arrive at that sentence. Tenn. Code Ann. §§ 40-35-209(c), -210(f) (2003). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). In the event the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169. If our review reflects that the trial court properly considered all relevant factors and that the record adequately supports its findings of fact, this court must affirm the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In the case under submission, the trial court found applicable two enhancement factors: (1) that the Defendant had a previous history of criminal convictions or criminal behavior in additional to those necessary to establish the appropriate range; and (2) that the defendant violated a position of private trust. Tenn. Code Ann. § 40-35-114 (2), (16) (2003). The trial court stated:

---

[3]We note that, effective June 7, 2005, this statute was amended, and the portion of the statute that mandated that the presumptive sentence was the minimum in the range was changed. The newly enacted statute mandates that a trial "court shall impose a sentence within the range of punishment determined . . . ." Tenn. Code Ann. § 40-35-210(c) (2003 & Supp. 2005).

[Enhancement factor] [n]umber two is applicable. Number two says, [t]he defendant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range. The only criminal behavior that I am concerned with is that there was a domestic assault charge, which actually occurred in May of 2001 but was not finally disposed of until April 14th of 2003. And then it was disposed of on a dismissal because anger management classes and court costs had been completed and paid. So I believe that, especially in view of the evidence in this case, that that would be an enhancement factor that should be considered. Certainly one prior incident is not the sort of thing that I usually see in imposing sentences. I usually see a page or two pages or three pages but it is, nevertheless, something that would enhance.

There are several other enhancement factors that apply, but most of them are double enhancement because they're built into the sentence. . . .

. . . .

[I]f this Court is allowed to consider other matters than prior record, number sixteen certainly would apply. Number sixteen is that, [t]he defendant abused a position of private trust in a manner that significantly facilitated the commission or fulfillment of the offense.

So I find that there are two enhancement factors that could easily justify the sentence in going towards the top of the range . . . .

About enhancement factor number two, the Defendant contends that the trial court erred when it applied this factor because the charge was dismissed and was, therefore, improperly considered as a previous conviction or previous criminal behavior. As previous criminal behavior, the trial court considered a domestic assault charge that was dismissed upon the completion of anger management classes and the payment of court costs. In State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), our Court held that an arrest or charge is not considered evidence of the commission of a crime. See State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984). In Miller, the State introduced evidence that the defendant had been twice arrested on charges of rape when both charges had been dismissed. Id. The Court held, "We are of the opinion that introduction of this evidence was improper and that a new sentencing hearing is required." Id. A trial court should not use evidence merely showing arrests, without more, to enhance a sentence. State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990). Thus, the trial court should not have relied on the mere arrests to enhance the sentence. See State v. George S. Mason, No. 01C01-9509-CC-00288, 1997 WL 211245, at *11 (Tenn. Crim. App., at Nashville, Apr. 30, 1997), perm. app. denied (Tenn. Dec. 22, 1997). Accordingly, in the case under submission, the trial court erred when it enhanced the Defendant's sentence based upon his previous domestic assault charge that had been dismissed.

We, however, conclude from our review of the record that the evidence does not preponderate against the trial court's application of this enhancement factor. In State v. Carico,

13

968 S.W.2d 280, 288 (Tenn. 1998), our Supreme Court held that evidence of an appellant's prior sexual acts with the victim was properly considered by the trial court as criminal behavior. The evidence at trial established that the Defendant committed other uncharged sexual batteries. Therefore, this enhancement factor is applicable based upon the other sexual encounters that occurred between the victim in this case and the Defendant.

Regarding enhancement factor number sixteen, regarding abuse of private trust, the Defendant contends that the trial court erred when it applied this enhancement factor because it is already built into the crime for which he was convicted. This theory has been rejected by our Supreme Court. See generally State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993). Therefore, the evidence does not preponderate against the trial court's findings, and the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE