# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 8, 2001 Session

## STATE OF TENNESSEE v. ROBERT DERRICK JOHNSON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Bedford County**
**No. 14272    William Charles Lee, Judge**

---

**No. M1998-00546-SC-R11-CD - Filed August 22, 2001**

---

We granted this appeal to consider two issues: whether the evidence introduced at trial indicated two separate offenses of sexual battery such that the trial court erred in failing to require the State to make an election at the close of the proof; and (2) whether the trial court erred in failing to give the jury an enhanced unanimity instruction. The Court of Criminal Appeals found that no election was required because the proof did not establish two separate offenses but concluded that the trial court erred by failing to give an enhanced unanimity instruction. However, the Court of Criminal Appeals found the error harmless and affirmed the defendant's conviction. After a careful and thorough review of the record and relevant authority, we agree with the Court of Criminal Appeals that the proof in this case indicates only one offense, with the two touches establishing one element, sexual contact, of the charged offense, sexual battery. Therefore, we conclude that the trial court did not err in failing to require an election. However, we do not agree that the trial court erred in failing to give the jury an enhanced unanimity instruction. Accordingly, we affirm the judgment of the Court of Criminal Appeal on the separate grounds stated.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Affirmed

FRANK F. DROWOTA, III, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR. and WILLIAM M. BARKER, JJ.joined. E. RILEY ANDERSON, C.J. filed a dissenting opinion in which JANICE M. HOLDER, J., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, Robert Derrick Johnson.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Marvin E. Clements, Jr., Assistant Attorney General; William Michael McCown, District Attorney General; Robert G. Crigler and Hollynn Hewgley, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Background

On December 27, 1997 at approximately 11:45 a.m., the victim, Wendy Smith, a driver for Brown's Taxi, picked up the defendant Robert Derrick Johnson at "The Pantry" in Shelbyville, Tennessee. The defendant put his jacket in the back seat of the taxi, but rode in the front seat with the victim. The defendant asked the victim to drive him to Wartrace. They arrived in Wartrace, but the defendant was unable to direct Smith to his friend's house, and they became lost. Eventually, the defendant told Smith his leg was hurting, and he asked her to stop the taxi. Smith pulled over, and the defendant got into the back seat of the taxi. Smith resumed driving, following the defendant's directions. Smith continued to drive, but she expressed concern because the area was remote and the road was hilly, curvy, and snow-covered.

Despite her concerns, Smith continued to drive, following the defendant's directions. At some point as she was driving, the defendant reached forward, wrapped a coat hanger around her neck,[1] and demanded to know how much money she had. When Smith replied that she had $57.50, the defendant insisted that she give him the money. Smith immediately handed the defendant the bank bag containing money. Because she was having trouble breathing, Smith asked the defendant to loosen the coat hanger and begged him not to kill her because she wanted to see her children again. The defendant loosened the coat hanger, but he did not remove it. Eventually, the defendant removed the coat hanger from Smith's neck, climbed into the front seat of the taxi, and continued to give driving directions.

The defendant repeatedly asked whether Smith intended to report him, and she reassured him that she would not and that she would give the police an incorrect description. Upon hearing this, the defendant said that he would let Smith go, but, he reached over, rubbed Smith's breast and between her legs over her clothing, and asked if she "had ever been with a black man." When he touched Smith between her legs, he realized that she had urinated on herself, and he stopped touching her. Smith asked to stop and use the restroom, but the defendant would not allow it, and he jerked the steering wheel when Smith tried to stop at a store, telling Smith not to do anything stupid. He reached beneath his shirt, and Smith testified that she did not know whether he had "a gun or what."

Eventually, the defendant threw the coat hanger out the window and told Smith to drive him to Shelbyville Central High School. She complied, and after the defendant had gotten out of the taxi, Smith asked the dispatcher at Brown's Taxi to call the police. Smith drove back to the taxi station where she met the police and reported the incident. Smith had seen the defendant before the incident and was able to identify him from police photographs.

The defendant was arrested and indicted for aggravated robbery, aggravated kidnapping, and aggravated sexual battery. At trial, Smith identified the defendant as the person who robbed her and

---

[1]The defendant later stated that he found the coat hanger in the backseat of the taxi.

touched her breast and between her legs. The defendant admitted that he robbed Smith, but he denied touching her. The jury found the defendant guilty of aggravated robbery, false imprisonment, and sexual battery.[2]

The Court of Criminal Appeals affirmed the defendant's convictions and sentences. With regard to the sexual battery conviction, the intermediate court held that the proof in this case indicated only one offense of sexual battery, thereby eliminating the need for the State to make an election of offenses at the close of the proof. The intermediate court further held, however, that the trial court erred in failing to give an enhanced unanimity instruction, but found that the error was harmless beyond a reasonable doubt.

Thereafter, we granted the defendant's application for permission to appeal to determine whether the facts of this case establish two separate offenses so that the trial court erred by failing to require the State to elect the facts upon which it was relying to establish the offense of sexual battery; and whether the trial court erred in failing to give the jury an enhanced unanimity instruction.

## Election of Offenses

This Court has consistently held that the prosecution must elect the facts upon which it is relying to establish the charged offense if evidence is introduced at trial indicating that the defendant has committed multiple offenses against the victim. See State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). The election requirement safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same evidence. Brown, 992 S.W.2d at 391.

The election requirement was first adopted in Jamison v. State, 117 Tenn. 58, 94 S. W. 675 (1906). This Court in Jamison held that proof of all sexual acts allegedly committed by the defendant against the victim could be admitted into evidence, but to avoid the prosecution of uncharged sex crimes, the State was required to elect the specific act upon which it was relying to obtain a guilty verdict. Jamison, 94 S. W. at 676. Since Jamison, the election requirement has been applied almost exclusively in the sex crimes context, and specifically, when the defendant is alleged to have committed a series of sexual acts over a lengthy period of time against young children who are unable to identify the exact date on which any one act was perpetrated. See, e.g., Brown, 992 S.W.2d at 389 (finding that the trial court erred in failing to require an election when the defendant was charged with rape of a child in a one count indictment that covered a six-month time frame, but the proof showed that at least ten instances of digital penetration occurred during the six months

_____

[2]The jury imposed a fine of $5,000 for aggravated robbery, $2,000 for false imprisonment, and $3000 for sexual battery. Following a sentencing hearing, the trial court sentenced the defendant to ten years for aggravated robbery; nine months for false imprisonment; one year and four months for sexual battery; and approved the fines assessed by the jury. The trial court ordered that the one-year- and-four-months sentence be served consecutively to the ten-year sentence and that the nine-month sentence be served concurrently to the ten-year sentence, thereby resulting in an effective sentence of eleven years and four months.

alleged, five occurring on one day and five others on different days); Walton, 958 S.W.2d at 724 (finding an election should have been required where sexual offenses were charged in a multi-count, open-ended indictment and where the child victim testified she was raped by the defendant or that he performed cunnilingus on her on a daily basis for over a year); State v. Burlison, 501 S.W.2d 801, 804 (Tenn. 1973) (finding an election should have been required where the defendant was charged with having "carnal knowledge" of the victim on "divers days between the summer of 1964 and August, 1969," but the proof did not show any particular date).

In 1994, this Court overruled Jamison to the extent it had established a "sex crimes exception" that permitted proof of all sexual acts allegedly committed by the defendant against the victim, whether charged or uncharged. See State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994) (overruling Jamison). Nonetheless, we recognized in Rickman that out of necessity indictments often charge general time frames that encompass several months. In those instances, we concluded that the State may introduce evidence of sex crimes allegedly committed against the victim during the time frame charged in the indictment, but, at the close of the proof, the State must elect the facts upon which it is relying for conviction. Id.

However, as the Court of Criminal Appeals recognized, the defendant's right to a unanimous jury verdict is not implicated in this case because the State charged only one offense and offered proof of only one offense – sexual battery. The facts of this case are significantly different from previous decisions applying and discussing the election requirement. Here, the indictment alleged that the offense occurred on a specific date certain. The proof did not show that the defendant had committed a series of sexual acts over a lengthy period of time. As the Court of Criminal Appeals stated, "[i]t is apparent from the evidence that all of this happened quickly and virtually simultaneously."

In our view, the defendant's assertion that the proof in this case established multiple offenses is simply incorrect. At most, the proof in this case established two touches that constitute one *element* of sexual battery, the offense charged. Sexual battery is defined as follows:

> [U]nlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
> (1) Force or coercion is used to accomplish the act;
> (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent;
> (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless. . . .

Tenn. Code Ann. § 39-13-505. Simply stated, the elements of sexual battery are (a) sexual contact; (b) with a victim by the defendant or the defendant by the victim; (c) accompanied by one of the circumstances listed as 1-3 above. See State v. Hammonds, 30 S.W.3d 294, 298 (Tenn. 2000) (listing the elements of aggravated assault); State v. Ducker, 27 S.W.3d 895, 889 (Tenn. 2000)

-4-

(listing the elements of reckless killing of a child). One <u>element</u> of the offense, "sexual contact," is further defined as:

> the intentional touching of the victim's, the defendant's, or any other person's <u>intimate parts</u>, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6) (emphasis added). Significantly, the statute uses the plural "parts" rather than the singular "part." Therefore, the statute contemplates that the element of "sexual contact" may be established by proof that the defendant touched more than one of the areas included within the definition of "intimate parts."[3] Simply stated, the <u>element</u> "sexual contact" was proven in this case by the victim's testimony that the defendant intentionally touched her breast and her groin area for the purpose of sexual arousal or gratification. This proof established one element of the charged offense, not two separate offenses, and the trial court did not err in refusing to require an election.[4]

The Court of Criminal Appeals has correctly and consistently recognized that the sexual battery statute is aimed at preventing sexual contact which may consist of more than one touch. Addressing the issue in an unpublished opinion, the Court of Criminal Appeals aptly explained the significant point:

> The gravamen of the [ ] sexual battery statute is physical sexual contact for the purpose of sexual arousal or gratification. Unlike the definition of penetration, the definition of this offense does not contain <u>physical acts</u> of sexual contact listed separately and alternatively. Indeed, the language more closely resembles the general language used to define aggravated assault in <u>[State v.] Pelayo</u> [881 S.W.2d 7 (Tenn. Crim. App. 1994)].

<u>State v. Bain</u>, No. 03C01-9311-CR-00384, 1995 WL 495932 (Tenn. Crim. App., Knoxville, Aug. 21, 1995) (emphasis added) (concluding that three touches of various parts of victim's body during one brief encounter constituted one offense of aggravated sexual battery); <u>see also</u> <u>State v. Perry Hinkle</u>, No. 02 C01-9603-CR-00076, 1996 WL 601726 (Tenn. Crim. App., Jackson, Oct. 22, 1996)

---

[3] "Intimate parts. . . includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

[4] While the dissent characterizes our reliance upon the plural term used in the statute as a "startling conclusion," the law is clear that the plain language of a statute is the best indication of legislative intent.

(upholding defendant's conviction for one count of aggravated sexual battery for touching child on breasts and vagina during one encounter).[5]

If the entire instance of sexual contact occurs quickly and virtually simultaneously, then only one offense has occurred, even if more than one touching has occurred.[6]  Accordingly, the prosecution need not elect which touch it is relying upon to establish sexual contact – an element of the charged offense – sexual battery.  See State v. Adams, 24 S.W.3d 289, 297 (Tenn. 2000) ("Our cases have not required that a jury unanimously agree as to facts supporting a particular element of a crime so long as the jury agrees that the appellant is guilty of the crime charged.")

This conclusion is also supported by several other prior decisions of this Court.  For example, we have previously held that a general verdict of guilt of first degree murder poses no constitutional problems even though some jurors may have convicted based on proof of premeditation and some jurors may have convicted based on proof of felony murder.  See, e.g., State v.Cribbs, 967 S.W.2d 773, 787 (Tenn. 1998).  The crucial point is all jurors unanimously agreed that the defendant was guilty and had committed the single offense charged even if some found premeditation and others found commission during the course of a felony.  Likewise, in State v. Lemacks, 996 S.W.2d 166, 171 (Tenn. 1999), we held that the prosecution was not required to elect criminal responsibility or direct liability when seeking a conviction for the single offense charged, driving under the influence. Again, the crucial point is all jurors unanimously agreed the defendant was guilty of the single offense charged even if some found criminal responsibility and others based their verdict on direct liability.  See also State v. Suttles, 30 S.W.3d 252, 262 (Tenn. 2000) (holding that the prosecution need not elect the proof upon which it is relying to establish the (i)(5) aggravating circumstance which itself has alternative prongs).  Likewise, in the present case, so long as the jurors agreed that the defendant engaged in sexual contact on the date charged, the defendant was afforded his constitutional right to juror unanimity.  This is true even though some of the jurors may have based their finding on one touching, and others may have based their finding on the other touching.

Also relevant to the analysis in this case is State v. Phillips, 924 S.W.2d 662 (Tenn. 1996), a case in which the defendant was convicted of multiple sexual offenses.  Before this Court, Phillips alleged that the multiple convictions violated his constitutional protection against double jeopardy because he had committed a single criminal offense.  In determining whether the defendant's multiple convictions arose from a single criminal offense we considered the following factors: (1) the nature of the acts committed by the defendant; (2) the area of the victim's body invaded by the defendant's sexually assaultive behavior; (3) the time elapsed between the defendant's discrete acts of sexually assaultive conduct; (4) the defendant's intent in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and (5) the

---

[5]Unpublished intermediate appellate court opinions are persuasive authority.  See Sup. Ct. R. 4(H)(1).

[6]The dissent misstates our holding when it asserts that multiple acts of sexual contact will always constitute only a single offense of sexual battery.  We are merely holding that where, as here, the sexual contact occurs quickly and virtually simultaneously, only one offense is established.  In so holding, we announce no new rule, we are merely applying well-established law, with which the dissent obviously disagrees.

cumulative punishment. Id. at 665. In Phillips, we determined that the multiple acts of penetration, distinct in nature and separated in time, constituted discrete offenses so that the prosecution could constitutionally seek multiple convictions.

In contrast, application of the Phillips factors does not militate in favor of a finding of two offenses in this case. The nature of the act is touching. Two parts of the victim's body were touched. There were no discrete acts of sexually assaultive conduct, such as occurred in Phillips. Little or no time elapsed between the touching; therefore, no evidence exists to indicate a newly formed intent to *again* seek sexual gratification. The proof showed only one instance of sexual contact, whereas the proof in Phillips showed separate acts of penetration. As to cumulative punishment, the way in which sexual battery is defined by statute suggests that the General Assembly intended to punish for each instance of sexual contact, not for each separate touch that may comprise one instance of sexual contact. Applying the Phillips factors, we conclude that the proof in this case indicates only one offense.[7]

Were we to hold that the prohibited touching in this case which occurred within a matter of minutes establishes two separate offenses, then a defendant involved in an assault could be charged, convicted, and punished for each individual blow struck, even if the entire assault occurs in only a matter of minutes. The Court of Criminal Appeals has already rejected such a result in State v. Pelayo, 881 S.W.2d 7 (Tenn. Crim. App. 1994), where the defendant was convicted of two counts of aggravated assault for cutting the victim first on the arm, and again, a few moments later, on the leg as she attempted to escape. The Court of Criminal Appeals concluded that the defendant had committed only one offense, stating: "[w]hile the assaults were separated by time and place, . . . they coalesced into an 'unmistakable single act,' though separated by a few seconds and feet." Id. at 13. In so holding the intermediate court noted that the aggravated assault statute focuses on the act of causing injury, fear, or physical contact. Id. The Pelayo court noted that the General Assembly did not intend for a defendant to be punished separately "for each blow or injury." Id.[8]

---

[7] The dissent's assertion that our analysis provides no guidance for future cases is plainly wrong. We have fully explained our application of the Phillips factors. Trial courts apply such factors on a regular basis and are well able to do so in future cases of this type. We need not articulate a bright-line rule. Indeed, Phillips rejected such a rule in favor of a case-by-case application of the relevant factors.

[8] The Pelayo court relied upon another unpublished opinion of the Court of Criminal Appeals, State v. Ronald St. Clair, No. 1158, 1990 WL 146519 (Tenn. Crim. App., Knoxville, Oct. 8, 1990) (Birch, J., author). In St. Clair, the defendant received two assault convictions for accosting a ninety-two-year-old woman in her home, threatening her with a knife, threatening to kill her, dragging her into or toward another room and choking her severely, all within a matter of minutes. The issue on appeal was whether the legislature intended that two punishments be imposed for a single criminal act. The Panel concluded that the events coalesced into an unmistakable single act of assault with a weapon, and therefore, the defendant had been twice convicted for a single offense in violation of double jeopardy.

Under existing Tennessee law, therefore, dual convictions for the conduct at issue in this case would be constitutionally prohibited.[9] That being the case, there is no legal or logical reason to hold that these facts establish two offenses for purposes of election.

While we affirm the Court of Criminal Appeals' conclusion that the proof in this case indicates only one criminal offense, we cannot agree with the Court of Criminal Appeals that the trial court erred in failing to provide the jury with an enhanced unanimity instruction. The record reflects that the jurors were instructed to render a unanimous verdict. The record does not reflect that the defendant requested an enhanced unanimity instruction. Moreover, the evidence indicated only one offense, so there was no need for such an instruction. Finally, such an instruction is not required even in cases where the proof does indicate more than one offense. The election requirement itself alleviates any unanimity concerns. Those states which require an enhanced unanimity instruction appear to rely upon it instead of, not in addition to, an election requirement. See State v. Greene, 623 A.2d 1342, 1344-45 (N.H. 1993); State v. Weaver, 964 P.2d 713, 720 (Mont. 1998). Accordingly, we do not agree with the Court of Criminal Appeals that the trial court erred by failing to give an enhanced unanimity instruction.

### Conclusion

Having concluded that the trial court did not err either by failing to require the State to make an election or by failing to give the jury an enhanced unanimity instruction, we affirm, on the separate grounds stated, the judgment of the Court of Criminal Appeals. It appearing that the defendant is indigent, costs of this appeal are taxed to the State.

FRANK F. DROWOTA, III,
JUSTICE

---

[9]The dissent refuses to apply existing law and concludes that dual convictions are appropriate because courts in other states uphold dual convictions in similar cases. This Court applies existing Tennessee precedent unless a valid reason exists for departing from it. In this case, we perceive no valid reason for departing from established law.