IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 24, 2009 at Knoxville

**LARRY DARNELL PINEX v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2373     Mark J. Fishburn, Judge**

_____

**No. M2009-00675-CCA-R3-CD - Filed March 5, 2010**

_____

The defendant, Larry Darnell Pinex, appeals from his Davidson County Criminal Court convictions of assault, attempted vandalism, and attempted theft. He claims that the trial court erred in not requiring the State to elect an offense to serve as the basis for the assault charge, that the evidence was insufficient to support the convictions of assault and attempted vandalism, and that the trial court erroneously sentenced him on all convictions. The attempted vandalism conviction must be reversed, and that charge must be dismissed because insufficient evidence underlies the conviction. The assault conviction is affirmed as are the sentences for assault and attempted theft.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part,**
**Reversed in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Dawn Deaner, District Public Defender, and Jeffrey A. DeVasher, Assistant Public Defender (on appeal), and Katie Weiss and Emily Todoran, Assistant Public Defenders (at trial), for the appellant, Larry Darnell Pinex.

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Robert Elliott McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The conviction offenses resulted from incidents that occurred at the EZ Market on Lafayette Street in Nashville on June 3, 2005. The evidence introduced at trial consisted of the testimony of Joe Crutcher, the photographs of the crime scene that were introduced

through his testimony, and the testimony and photographs of a Metro Nashville Police Department crime scene officer.

Mr. Crutcher testified that in June 2005 he was employed by EZ Market as a stockman and utility person and that, on June 3, the defendant came into the market, went to the cooler, removed some bottled beer from the cooler, and placed the beer under his shirt. When the defendant moved toward the door, another employee of the market confronted him about the beer and retrieved it. The defendant cursed and left through the door, slamming it so hard the door glass broke. A short time later, the defendant re-entered the store and went back to the beer cooler and picked up some beer. When the store employees told him to put the beer back, he cursed, threw a beer bottle toward the check-out counter, and threw a second bottle in the direction of Mr. Crutcher. Then, as the defendant approached Mr. Crutcher with another bottle of beer "drawn back," Mr. Crutcher pulled a pistol and shot him.

Mr. Crutcher testified that he shot the defendant because he "thought [the defendant] was going to hit [him] with that bottle." He added that the defendant was a larger man than was he.

Mr. Crutcher testified that he was paid in cash each night by EZ Market. He further testified that he had brought the gun that he used to shoot the defendant to the store, as was his custom. He had placed the gun on a shelf in the stock room, but after the defendant came into the store the first time, Mr. Crutcher put the gun in his pocket.

The State closed its case, and the defendant called the crime scene officer who introduced into evidence photographs in addition to those identified and introduced by Mr. Crutcher.

The jury convicted the defendant of assault and attempted vandalism. The trial court imposed sentences of 11 months, 29 days for the Class A misdemeanor of assault and 6 months for the Class B misdemeanor of attempted vandalism. Also, the court imposed a sentence of 6 months for the Class B misdemeanor conviction of attempted theft, a charge to which the defendant pleaded guilty prior to the jury verdicts on the other two charges. The trial court ordered these sentences to be served concurrently, but it ordered this effective sentence to be served consecutively to a sentence in another case.

On appeal, the defendant claims that the trial court erred in failing to require the State to "elect the specific factual occurrence on which it sought a conviction for aggravated assault," that the evidence was insufficient to support the convictions of assault and attempted vandalism, and that the trial court erred in sentencing the defendant.

-2-

*I.  Election of Offenses*

At the conclusion of the State's proof, the defendant moved the trial court to require the State to elect between two instances of assault alleged by victim Joe Crutcher. The defendant identified the victim's claim that the defendant threw a bottle at him as one instance of assault and the claim that the defendant raised another bottle toward him as a second instance.  The trial court ruled that the defendant's actions directed toward Mr. Crutrcher in the EZ Market were a continuous course of assaultive conduct.  The trial court gave no specific instructions to the jury regarding the requirement of unanimity vis a vis the two actions identified by the defendant.  The defendant argues on appeal that the failure of the State to elect between these two instances as the basis for the single charge of assault violated his state constitutional right to a unanimous jury verdict.

*A.  Motion for New Trial*

Before we address the merits of this issue, we must first determine whether the issue is properly before us.  The jury trial was held on September 16, 2008.  Each judgment reflects in handwriting "9/16/08" as the date of entry.[1]  A transcript of the sentencing hearing contained in the appellate record, however, indicates that the hearing was not held until September 19, 2008.  A motion for new trial was not filed until October 20, 2008.

A motion for new trial must be made in writing or reduced to writing within thirty days of the "date the order of sentence is entered."  Tenn. R. Crim. P. 33(b).  This provision is mandatory, and the time for the filing cannot be extended.  Tenn. R. Crim. P. 45(b); *State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997).  Furthermore, the appellate court is precluded from considering any issue raised in an untimely motion for new trial for which the remedy is a new trial.  Tenn. R. App. P. 3(e).  In the present case, the claim of an untimely motion for new trial affects only the election issue, not the issue of sufficiency of the evidence or the sentencing issues.

The thirtieth day from September 16, 2008, was Thursday, October 16, 2008, but the thirtieth day from September 19, 2008, was Sunday, October 19, 2008, a circumstance that, working from September 19, would have extended the 30-day period through October 20, the day on which the motion for new trial was filed.  Thus, the motion was untimely if the judgments were entered on September 16 but timely if they were entered on September 19 or thereafter.

---

[1]The judgments contain no file dates stamped by the trial court clerk.  This court ordered the trial court clerk to supplement the appellate record with copies of date-stamped judgments if any existed; the trial court clerk duly filed an affidavit stating that no date-stamped judgments were filed in the trial court.

We begin by pointing out that the State has not raised the issue of untimeliness of the motion for new trial; indeed, the State's brief says, "A motion for new trial was timely filed on October 20, 2008." Notwithstanding the State's acknowledgment, we must independently determine whether this court has jurisdiction to consider the election issue on appeal. *See, e.g.*, *State v. Joseph Benjamin Comer IV*, No. E2007-00544-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Apr. 21, 2008).

We emphasize that, in Tennessee criminal cases, the "judgment of conviction shall include: (A) the plea; (B) the verdict or findings; and (C) the adjudication *and sentence*." Tenn. R. Crim. P. 32(e)(2) (emphasis added). Although an "order" containing the plea, verdict, and adjudication may have been executed on September 16, the "judgment of conviction" as prescribed by Rule 32(e) could not have been entered prior to September 19, 2008, because the sentence was not determined until then. In light of this recognition, and in view of the State's lack of contention on the issue, we deem the handwritten entry date of the prescribed judgment of conviction to be clerical error and that the judgment was effectively entered on September 19, 2009. As such, the motion for new trial was timely.[2]

That accomplished, we take up the election of offense issue.

### B. Merits of the Issue

Under Tennessee law, if the evidence at trial suggests that the defendant has committed more offenses than the number charged, the court has the obligation to require the State to elect the offense(s) for which it seeks conviction. *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993). The accused has a fundamental constitutional right to the election. *See id.*; *State v. Walton*, 958 S.W.2d 724, 727 (Tenn. 1997). This court has said:

> [I]n cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular

---

[2]We surmise that portions of the judgment form, including the "date of entry," may have been filled out on September 16, following the trial, and that the sentencing terms were not filled in until September 19 or after. Adding to the distortion of the record is the absence of the trial court clerk's date-of-filing stamp. We encourage trial courts not to embark upon "filling out" the uniform judgment form until after the sentence has been determined, and we urge trial court clerks to date stamp the judgment when it is filed, as in the case of all other filings in that court.

-4-

set of facts. The assessment of this potential would involve consideration of the allegations made and the statutory offense charged, as well as the actual evidence presented.

*State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991); *see also State v. Forbes*, 918 S.W.2d 431, 446 (Tenn. Crim. App. 1995).

We acknowledge that, if the defendant's actions resulted in two assaults, the trial court should have addressed the issue by requiring an election and/or by imparting an enhanced unanimity instruction to the jury; however, we decline to dwell upon whether the defendant's assaultive actions in handling two beer bottles equated to one assault or two. We hold that, in this case, any error in requiring an election was harmless beyond a reasonable doubt.

Mr. Crutcher's testimony described fluid actions by the defendant that occurred in a short time-frame. His testimony suggested no distinction in credibility as between one "action" and the other. Furthermore, the defendant has suggested "nothing to diminish the quality of the state's proof regarding one of the [actions] versus the other." *See State v. Robert Derrick Johnson*, No. M1998-00546-CCA-R3-CD, slip op. at 12 (Tenn. Crim. App., Nashville, Dec. 30, 1999), *aff'd on separate grounds*, 53 S.W.3d 628 (Tenn. 2001). "In such a situation," this court said in *Robert Derrick Johnson*, "the risk of the jury convicting the defendant on a less than unanimous agreement as to the factual basis for the offense is negligible, at best." *Id.* As such, the jury in the present case had no basis for accrediting "the state's evidence in part and reject[ing] it in part." *See id.* Finally, we note that the trial court did administer the general instruction on the requirement of unanimity. All in all, we cannot discern reversible error in the proceedings.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence underlying both jury verdicts.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).

-5-

In determining the sufficiency of the evidence, the appellate court should not reweigh or reevaluate the evidence, *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), and questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not the appellate court, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Also, this court may not substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

## *A. Assault*

The defendant posits that the conviction of assault "cannot stand because the physical evidence, which established that only one (1) beer bottle was found on the floor at the front of the market, cannot be reconciled with Crutcher's testimony that the defendant threw two (2) bottles and left a third bottle on the floor at the back of the market." The defendant asks the court to apply the "physical facts rule" to overturn the assault conviction.

The "physical facts rule" has been explained as "the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded." *State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn. 1993). The rule comes into play when "the testimony of a witness 'cannot possibly be true, is inherently unbelievable, or is opposed to natural laws,' [so that] courts can declare the testimony incredible as a matter of law and decline to consider it," *id.* (quoting *United States v. Narciso*, 446 F. Supp. 252, 282 (E.D. Mich. 1977)), and when "'undisputed physical facts are entirely inconsistent with and opposed to testimony,'" *id.* (quoting *Wood v. United States*, 342 F.2d 708, 713 (8th Cir. 1965)). A high threshold, however, must first be surmounted to apply the rule. "We caution," wrote the supreme court in *Hornsby*, "that the power to disregard oral testimony because of its inherent lack of believability is one that should be used sparingly." *Id.* at 895. The court continued,

> Only when the testimony is inherently improbable and impossible of belief should courts intervene to declare it incredible as a matter of law. When the testimony is capable of different interpretations, the matter should be left for the jury to decide as the sole arbiter of credibility. Deciding whether there are inconsistencies in testimony, reconciling conflicts in testimony, and how this might affect a witness's credibility, are

all within the province of the jury. As the court observed . . . "the improbability of the truth of the testimony, which justifies rejection under the physical facts rule, cannot rest upon any theory involving the consideration of the comparative credibility of the witnesses."

*Id*. at 895-96 (citations omitted).

The recommended reluctance to apply the physical facts rule leads us ultimately to reject it in this case. We must allow the jury to resolve the issue of how many bottles the defendant handled or threw, and we are mindful that various possibilities exist to explain the crime scene officer's finding only one bottle lying about the EZ Market. The officer's testimony and his photographs do not render Mr. Crutcher's testimony "inherently improbable or impossible of belief," given the inferences the jury was empowered to draw from the evidence. Therefore, and because the evidence otherwise establishes the elements of the assault, we affirm that conviction.

### B. Attempted Vandalism

Citing the scienter requirement that causing damage to or the destruction of any real or personal property must be knowing, *see* T.C.A. § 39-14-408(a), the defendant claims that the evidence failed to establish that he knowingly attempted to damage the front door of the EZ Market when he slammed the door during his initial exit of the store on June 3. The defendant argues on appeal that the breaking of the door glass resulted from nothing more than the defendant's recklessness.

Although we do not adopt the defendant's line of argument per se, we agree with him that the evidence does not support the attempted vandalism verdict as a matter of law. "[S]pecific intent to commit an offense" is a "traditional requirement" of the law of attempt in Tennessee. T.C.A § 39-12-101, Sentencing Comm'n Cmts. The proof in the present case does not establish beyond a reasonable doubt that the defendant acted with specific intent to damage the market's door. The defendant may have been "aware of but consciously disregard[ed] a substantial and unjustifiable risk that . . . the result [would] occur," but such awareness and disregard constituting a "gross deviation from the standard of care that an ordinary person would exercise under all the circumstances" would equate only to recklessness. *See* T.C.A. § 39-11-302(c). Accordingly, we reverse the conviction of attempted vandalism and order the dismissal of that count.

*III. Sentencing*

The defendant claims that the maximum misdemeanor sentences imposed on the three convictions were excessive and that the trial court's alignment of the effective sentence in this case to be served consecutively to a 35-year sentence in another case was erroneous.

*A. Sentence Length*

The trial court enhanced the defendant's sentences based upon his prior criminal activity and the involvement of more than one victim. *See* T.C.A. § 40-35-114(2),(4) (2003). Given an offense date such as that in this case, a trial court, had it been engaged in felony sentencing, would have been constitutionally constrained from using any factor to enhance a sentence except the defendant's record of prior convictions, unless the defendant otherwise admitted the factual bases for other enhancement factors. *See generally State v. Gomez*, 239 S.W.3d 733 (Tenn. 2007).

When there is a challenge to the length of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.*

In misdemeanor sentencing, the sentencing court is afforded considerable latitude. *See, e.g.*, *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999). A separate sentencing hearing is not mandatory in misdemeanor cases, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. *See* T.C.A. § 40-35-302(a) (2003). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Generally, a percentage of not greater than 75 percent of the sentence should be fixed for a misdemeanor offender. *Id.* at 393-94. A convicted misdemeanant has no presumption of entitlement to a minimum sentence. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Although in felony sentencing the trial court has an affirmative duty to state on the record, either orally or in writing, which

enhancement and mitigating factors it found applicable and its findings of fact, *see* T.C.A. §§ 40-35-209(c), -210(f) (2003), the misdemeanor sentencing statute, in contrast, only requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs," *id.*§ 40-35-302(d) (2003); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998).

Although the present case arose prior to the legislature's amendment of the Tennessee felony sentencing law to comply with requirements of the Sixth Amendment to the United States Constitution, that amendment's constraints upon a judge's fact-finding in imposing a sentence do not apply to misdemeanors. *State v. Jeffery D. Hostetter*, No. M2003-02839-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Nashville, Dec. 29, 2004), *perm. app. denied* (Tenn. 2005). Thus, the trial judge, who was instructed by statute merely to consider the enhancement factors and who was laboring without the constraints of a presumptive sentence, was free to consider applicable enhancement factors other than prior criminal record and enjoyed wide latitude in fixing the misdemeanor sentences.

Although we agree that the record fails to support the application of the enhancement factor that more than one victim was involved in any offense, the defendant's record of many prior convictions as shown by the presentence report justifies the trial court's imposition of maximum sentences for the misdemeanors at issue.

### B. Consecutive Sentencing

The trial court aligned the present sentences concurrently, but it imposed the effective sentence of 11 months, 29 days to be served consecutively to a prior Range III, 35-year sentence. *See State v. Larry Darnell Pinex*, No. M2007-01211-CCA-R3-CD (Tenn. Crim. App., Nashville, Nov. 6, 2008) (modifying defendant's effective 37-year sentence for convictions of attempted aggravated rape and attempted aggravated burglary to 35 years). The trial court based the consecutive alignment upon the defendant's extensive record of criminal activity. *See* T.C.A. § 40-35-115(b)(2). The defendant argues that the 11-month, 29-day sentence stacked onto the 35-year sentence to be served at 45 percent exceeds that "deserved for the offense committed" and is more than the "least severe measure necessary to achieve the purposes for which the sentence is imposed" upon the 52-year-old defendant.

The trial court may order sentences to be served consecutively when it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). In addition to the convictions of attempted aggravated rape and attempted aggravated burglary described in *Larry Darnell Pinex*, the defendant had garnered prior convictions of disorderly conduct, driving on a

suspended license, assault, theft, possession of drug paraphernalia, possession of a weapon, aggravated assault, armed robbery, and attempted rape. The presentence report showed multiple prior convictions of theft, aggravated assault, and armed robbery. In view of this record, we hold that the imposition of consecutive sentencing in the present case was warranted and was not excessively severe.

*IV. Conclusion*

Based upon the above analyses, we affirm the convictions of and sentences for assault and attempted theft. We reverse the conviction of attempted vandalism and order the dismissal of that charge.

_____
JAMES CURWOOD WITT, JR., JUDGE