IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
March 4, 2015 Session

**STATE OF TENNESSEE v. COURTNEY KNOWLES**

**Appeal from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 07-06139    James M. Lammey, Judge**

───────────────────────────

**No. W2013-00503-SC-R11-CD – Filed July 31, 2015**

───────────────────────────

GARY R. WADE, J., dissenting.

"Hard cases, it has frequently been observed, are apt to introduce bad law." Winterbottom v. Wright, 152 Eng. Rep. 403, 404 (1842). The same is true of "cases in which . . . moral indignation . . . is aroused" by egregious facts. Glanville Williams, The Sanctity of Life and the Criminal Law 105 (1957). The defendant here, convicted of the rape of a child and already serving a forty-year sentence for related federal offenses, deserves no sympathy. Because, however, constitutional principles sometimes get in the way of what might otherwise qualify as a just punishment, I must dissent from my colleagues. The fundamental principle at issue here is the right to a unanimous jury verdict, see Tenn. Const. art. I, § 6, which requires the State to elect the specific evidence it is relying upon for a conviction when the jury hears proof of more than one instance of sexual misconduct. State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001). Regrettably, the State misidentified the factual basis for the charged offense in this instance. Because this error, although clearly inadvertent, served to undermine the fundamental right to a unanimous verdict, I believe that a new trial should be ordered.

**I. Facts and Procedural History**

In August of 2007, Courtney Knowles (the "Defendant") was indicted for the rape of the minor daughter of his half-sister, T.M., who was also his live-in girlfriend. The indictment provided that "between January 1, 2005 and April 21, 2007, . . . [the Defendant] did unlawfully and intentionally sexually penetrate [the victim], a person more than three (3) years of age but less than thirteen (13) years of age."

The State's proof established that in April of 2005, when the victim was in third grade, her sister was hospitalized. The Defendant drove the victim home from the hospital to retrieve clothes, food, and toiletries. While at their residence, the Defendant

"took all [the victim's] clothes off"; touched her "private area," including "[her] vagina and [her] butt"; and forced her to perform fellatio on him. In addition to the April 2005 incident, the State presented evidence of several other instances of sexual misconduct: (1) in January of 2005, the Defendant told T.M. that he had "licked" the victim; (2) on Easter Sunday of 2007, T.M. discovered a video tape with footage of the Defendant touching the victim's vagina, and the victim testified that the Defendant had "play[ed] with [her] breasts, [her] vagina, and [her] bottom" on that occasion; and (3) on an unspecified date between the January 2005 incident and the discovery of the video tape in 2007, the Defendant took the victim to a hotel room, where the Defendant "lick[ed] her vagina" and rubbed his penis back and forth "on top" of her vagina. The victim also testified that the Defendant had sexually abused her "like every day" by touching her private areas and "lick[ing] [her] vagina."

At the close of its case-in-chief, the State, which had chosen to proceed on a single charge, elected to seek a conviction based on "the alleged act of rape of a child occurring in April[] 2005 . . . when the victim and [the Defendant] returned from the hospital." The trial court directed the State to elect a specific type of penetration, and the State chose cunnilingus. Based upon the State's election, the trial court provided the following instruction to the jury:

> In this case, the [S]tate has elected to submit for your consideration **the alleged act of Rape of a Child by Cunnilingus** occurring in April 2005, at [T.M.'s residence], when the victim and [the D]efendant returned home from the hospital to obtain clothing, toiletries, and food.

> Members of the jury, you are to consider **only this alleged act** in deciding whether or not the [D]efendant has been proven guilty beyond a reasonable doubt of the offense[] charged . . . in the indictment.

(Emphasis added.) The jury found the Defendant guilty, and the trial court imposed a sentence of twenty-five years, to be served consecutively to a prior federal sentence.[1] The Court of Criminal Appeals properly concluded that the State's election was in error because there was no proof of cunnilingus during the April 2005 incident. State v. Knowles, No. W2013-00503-CCA-MR3-CD, 2014 WL 1831018, at *7 (Tenn. Crim. App. May 5, 2014). Nevertheless, the court affirmed the conviction, holding that the error was harmless beyond a reasonable doubt because "the victim's articulate and particularized testimony of a single act of penetration by **fellatio** under very specific

---

[1] The record indicates that the Defendant received a total sentence of forty years for his federal convictions, which included sexual exploitation of a minor and possession of materials involving the sexual exploitation of a minor. See United States v. Knowles, 623 F.3d 381 (6th Cir. 2010) (affirming the Defendant's federal convictions).

-2-

circumstances . . . satisf[ied] the requirement of jury unanimity despite the State's inaccurate election." Id. (emphasis added).

## II. Analysis

In order to ensure a defendant's constitutional right to a unanimous jury verdict on a particular charge, whenever the evidence includes multiple instances of misconduct that could support the charge, the State must elect at the close of its case-in-chief the offense for which it is seeking a conviction. Johnson, 53 S.W.3d at 630; State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001). This Court has previously explained the purposes of the rule:

> First, it ensures that a defendant is able to prepare for and make a defense for a specific charge. Second, election protects a defendant against double jeopardy by prohibiting retrial on the same specific charge. Third, it enables the trial court and the appellate courts to review the legal sufficiency of the evidence. The most important reason for the election requirement, however, is that it ensures that the jurors deliberate over and render a verdict on the same offense.

State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000). The rule mandating an election is not so inflexible as to require the State to identify the particular date of a chosen offense. State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). "Any description that will identify the prosecuted offense for the jury is sufficient." Id. at 138. Thus, the identification of "a particular type of abuse may be sufficient," as may be "unique surroundings or circumstances that help to identify an incident." Id.

In this instance, however, the prosecutor became confused about the time frame and the criminal acts, electing to prosecute an act of sexual misconduct that did not occur during the April 2005 incident. Because the Defendant, through his counsel, failed to challenge the clearly erroneous election, appellate review is governed by the plain error doctrine. Of course, plain error relief is warranted only if the following criteria are satisfied:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

State v. Dotson, 450 S.W.3d 1, 49 (Tenn. 2014) (quoting State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)). The majority has denied plain error relief based upon the first

-3-

and fifth factors. Because I believe that all five factors have been satisfied, I would order a new trial.

## A. Adequacy of the Record

The majority indicates that the omission of closing arguments from the record prepared for this appeal precludes plain error relief. This determination, in my view, rests on the faulty premise that an improper election can be cured by closing argument.

Although this Court has never before held that an election error may be cured by the State's closing argument, a series of unpublished decisions by our Court of Criminal Appeals suggests that when there is no election, the State's closing argument may serve as a substitute if it effectively clarifies which evidence the State is relying upon for a particular charge. See, e.g., State v. Busby, No. M2004-00925-CCA-R3-CD, 2005 WL 711904, at *6 (Tenn. Crim. App. Mar. 29, 2005); State v. Kimbrell, No. M2000-02925-CCA-R3-CD, 2003 WL 1877094, at *23 (Tenn. Crim. App. Apr. 15, 2003); State v. McCann, No. M2000-2990-CCA-R3-CD, 2001 WL 1246383, at *5 (Tenn. Crim. App. Oct. 17, 2001); State v. Dearry, No. 03C01-9612-CC-00462, 1998 WL 47946, at *13 (Tenn. Crim. App. Feb. 6, 1998). I concede, therefore, that the majority opinion has some precedential support. In my view, however, "closing argument by the [S]tate cannot serve as a substitute for election." Dearry, 1998 WL 47946, at *15 (Wade, J., concurring). As indicated, one of the purposes of the election doctrine is to "ensure[] that a defendant is able to prepare for and make a defense for a specific charge." Adams, 24 S.W.3d at 294. This purpose is not achieved if the State fails to properly elect at the close of its case-in-chief and then attempts to rectify the error during closing argument, when the defendant has no further opportunity to formulate a defense or present contrary evidence. See Vinson v. State, 203 S.W. 338, 339 (Tenn. 1918) ("The defendant is entitled to require the election **before** he introduces any proof so that he can meet by his proof the evidence upon which the [S]tate relies." (emphasis added)); see also State v. Kassebeer, 193 P.3d 409, 425 (Haw. 2008) (holding that an election error could not be cured by closing argument "because the prosecution's election of the specific act must take place **at or before the close of its case-in-chief**, thereby rendering insufficient its attempt to do so during closing arguments" (citation omitted)).

Moreover, as the majority acknowledges, each of the Court of Criminal Appeals cases cited involved the State's **failure** to make an election. This case is different because the State made an election that did not match the proof, and the trial court gave a jury instruction that reflected the State's inaccurate election. Even if the State clarified its election by focusing on fellatio during its closing argument, to hold that the jury unanimously relied upon fellatio as the basis for the conviction would require us to presume that the jury disregarded the trial court's instruction "to consider only [the] alleged act [of cunnilingus]." This rationale is contrary to the well-established

-4-

presumption that the jury follows all instructions given by the trial court.  See, e.g., State v. Robinson, 146 S.W.3d 469, 494 (Tenn. 2004); see also Kassebeer, 193 P.3d at 425-26 ("[J]ust as arguments of counsel cannot substitute for evidence, so too may they not cure defects in jury instructions. . . .  Arguments by counsel are likely to be viewed as statements of advocacy, whereas a jury instruction is a definitive and binding statement of law." (citation omitted)).

Because closing argument, in my assessment, cannot cure an inaccurate election or a deficient jury instruction, the Defendant's failure to include a verbatim transcript should not preclude a finding of plain error.

## B. Substantial Justice

The concept of a unanimous jury verdict is so essential to our criminal justice system that consideration of an election error is necessary where, as here, an inaccurate election results in a significant risk of a non-unanimous verdict.  See Kendrick, 38 S.W.3d at 570.

One reason that there was a significant risk of a non-unanimous verdict is that the April 2005 incident elected by the State involved proof of two distinct sex offenses, either of which could have supported the single charge in the indictment.  The victim testified that when she accompanied the Defendant home from the hospital in April of 2005, he forced her to perform fellatio, thereby committing the rape of a child, see Tenn. Code Ann. § 13-15-522(a).  In addition, the Defendant "took all [the victim's] clothes off" and "touched . . . [her] private area," including "[her] vagina."  Touching the victim in this manner also arguably qualified as the rape of a child, id.,[2] and at the very least amounted to an aggravated sexual battery, Tenn. Code Ann. § 13-13-504(a).  Because the victim's

---

[2] This Court has held that penetration, which is an element of rape of a child, does not require "that the vagina be entered or that the hymen be ruptured; the entering of the vulva or labia is sufficient." State v. Bowles, 52 S.W.3d 69, 74 (Tenn. 2001) (quoting Hart v. State, 21 S.W.3d 901, 905 (Tenn. 2000)).  Moreover, both this Court and the Court of Criminal Appeals have upheld rape convictions based upon testimony analogous to the victim's testimony in this instance that the Defendant, after taking all her clothes off, touched her "private area," including her vagina.  See id. (finding sufficient evidence of penetration based on the victim's testimony that the defendant had "pressed his penis against her vulva with his hand"); State v. Troxell, No. E2012-00233-CCA-R3-CD, 2012 WL 3642821, at *3 (Tenn. Crim. App. Aug. 27, 2012) (finding sufficient evidence of penetration based on the victim's testimony "that the defendant placed his fingers on her vagina and rubbed her vaginal area"); State v. Brown, No. M2009-00505-CCA-R3-CD, 2010 WL 4396490, at *10 (Tenn. Crim. App. Nov. 5, 2010) (finding sufficient evidence of penetration based on the victim's testimony that the defendant had "put [a] vibrator on her . . . clitoris"); State v. Crane, No. W2000-01892-CCA-R3-CD, 2001 WL 912798, at *2 (Tenn. Crim. App. Aug. 9, 2001) (finding sufficient evidence of penetration where the defendant "admitted [to] 'playing' with [the victim's] vagina with his penis, but denied placing his penis inside the victim's vagina").

testimony about the April 2005 incident includes two distinct acts of sexual misconduct, either of which could support the single charged offense, there is no way to be sure that the jurors unanimously convicted based on the same act.

The majority attempts to refute this point by citing several cases in which this Court has observed that jurors do not have to agree upon the facts supporting a particular element so long as they consider only a single offense. See Johnson, 53 S.W.3d at 633; Adams, 24 S.W.3d at 297; State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999). None of these cases are on point, however, because each involved an incident in which only one offense was committed. Johnson, 53 S.W.3d at 634-35 (finding that no election was necessary because "only one [sexual battery] occurred, even if more than one touching . . . occurred"); Adams, 24 S.W.3d at 297 ("Because we find that the offense of child abuse through neglect is a single, continuing offense, we hold that the State was not required to make an election of offenses."); Lemacks, 996 S.W.2d at 171("In such cases, as here, where the State seeks to prove one crime arising from one event, we may presume that the jury's general verdict was unanimous."). What makes this case different is that the April 2005 incident involved two distinct sex acts that qualified as separate offenses. See State v. Hogg, 448 S.W.3d 877, 886 (Tenn. 2014) (holding that "separate incidents of sexual penetration" give rise to separate offenses). Indeed, in Johnson, one of the cases relied upon by the majority, this Court specifically distinguished between multiple non-penetrative acts of sexual touching, which "may comprise one instance of sexual contact," and "multiple acts of penetration," which "constitute[] discrete offenses." 53 S.W.3d at 634.

For over a century, Tennessee law has been clear that when an incident involves proof of multiple acts that constitute separate offenses, as is the case here, the State must elect which act it seeks to prosecute. See Kendrick, 38 S.W.3d at 568 (granting plain error relief because there were two "separate and distinct" sex offenses during a single incident and the State failed to elect between the two); State v. Walton, 958 S.W.2d 724, 727-28 (Tenn. 1997) (granting plain error relief because the State "did not elect which of the numerous **types** of sexual acts it relied upon to establish the convictions," making it so that "each juror was left to choose independently the act(s) of abuse upon which to base a verdict"); Jamison v. State, 94 S.W. 675, 676 (Tenn. 1906) (holding that the State failed to properly elect between multiple sex acts because "each unlawful act of carnal knowledge is a separate, substantive offense"), overruled on other grounds by State v. Rickman, 876 S.W.2d 824, 828 n.8 (Tenn. 1994); State v. Clabo, 905 S.W.2d 197, 205 (Tenn. Crim. App. 1995) (granting plain error relief because the proof established "two separate acts" of rape during the same incident and the State failed to elect between the two, resulting in a "grave constitutional error . . . in that the defendant may have been denied a unanimous jury verdict"). In this instance, the State created a significant risk of a non-unanimous jury verdict when it failed to elect between the two distinct offenses that

occurred in the April 2005 incident, electing instead to prosecute an act that did not occur during that incident. See State v. Brown, 992 S.W.2d 389, 392 (Tenn. 1999) (granting a new trial where "the deficiency in the election at trial was further compounded by the fact that the time-frame chosen by the prosecutor was simply inaccurate").

Moreover, even if there had been only one act of sexual misconduct during the April 2005 incident, the risk of a non-unanimous jury verdict would still be so significant as to warrant plain error relief. As noted, the State's election consisted of a date (the day of the hospital trip in April 2005) and a sex act (cunnilingus) that did not match. While the majority concludes that the jury must have unanimously convicted based upon some other sex act that did occur on the date elected, it is equally plausible that some members of the jury convicted based on the elected act of cunnilingus that occurred in a different time frame. Two additional circumstances make a non-unanimous verdict even more probable: (1) the State presented proof that the Defendant subjected the victim to cunnilingus on several other occasions; and (2) the trial court, after confirming that the State had elected the "alleged act" of "[c]unnilingus," instructed the jury "to consider **only this alleged act** in deciding whether or not the [D]efendant has been proven guilty." (Emphasis added.) Given that both the State's proof and the trial court's instructions focused on the act of cunnilingus, I cannot agree with the majority's determination that the jury must have unanimously agreed to convict based upon a different sex act.

### C. Other Plain Error Criteria

I will briefly address the three remaining plain error factors, all of which have been satisfied. As to the second factor, because it is undisputed that the election was factually erroneous, a clear and unequivocal rule of law was breached. As to the third factor, the election error affected the Defendant's right to a unanimous jury verdict, which undoubtedly qualifies as a substantial right. See Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973) (characterizing the requirement of jury unanimity as "fundamental" and "immediately touching the constitutional rights of an accused"). As to the fourth factor, there was no strategic basis for the Defendant's failure to present this issue in the trial court. Thus, in my assessment, all of the prerequisites for plain error relief have been established.

### III. Conclusion

In summary, the election error in this case undermined the fundamental constitutional requirement of a unanimous jury verdict. Because of the lack of certainty as to the nature and timing of the offense, I cannot contemplate any remedy other than a new trial.

_____
GARY R. WADE, JUSTICE