IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2011

## STATE OF TENNESSEE v. TONY ARNESS DEGRAFFREED

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6226      Joseph H. Walker, Judge**

**No. W2010-00926-CCA-R3-CD  - Filed June 28, 2011**

A Tipton County Circuit Court jury convicted the appellant, Tony Arness Degraffreed, of rape of a child, a Class A felony, and the trial court sentenced him to twenty-five years in confinement to be served at one hundred percent.  On appeal, the appellant contends that (1) the evidence is insufficient to support the conviction, (2) the trial court erred by refusing to require the jury to determine whether his penetration of the victim was digital or penile, and (3) the State improperly commented on the appellant's failure to testify during it closing argument.  Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JERRY L. SMITH, and ALAN E. GLENN, JJ., joined.

Clifford K. McGown, Jr. (on appeal), Waverly, Tennessee, and Lyle A. Jones and David S. Stockton (at trial), Covington, Tennessee, for the appellant, Tony Arness Degraffreed.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., and Kim Linville, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

A.D.,[1] the victim's mother, testified that she married the appellant in 2005, when the victim was about seven years old. She and the appellant then had two children together. The appellant was not the victim's biological father, but the victim called him "dad." In November 2008, A.D., the appellant, and the three children were living in Covington, Tennessee, and the victim was eleven years old. About 3:00 a.m. on November 15, A.D. went to bed. Her youngest child, T.D., was in bed with her. The appellant came into the room, put T.D. in bed with the victim in the victim's bedroom, and asked A.D. to have sex with him. A.D. told him no and went back to sleep. A.D. said that about 6:00 a.m., the victim woke her and told her, "He's touched me again." The victim was shaking and scared. A.D. knew the victim was referring to the appellant, and A.D. was going to ask the appellant about the victim's allegations. She said that before she got a chance to ask him, he "started telling me he didn't do nothing, he didn't touch her." A.D. telephoned the police. A.D. later spoke with Detective Pamela Ford and told her what had happened. Detective Ford also talked with the victim. The detective took A.D. and the victim to the Memphis Sexual Assault Resource Center (MSARC), where a nurse performed a pelvic exam on the victim. A.D. then took her children to her father's house and returned to her home with Detective Ford. Detective Ford arrested the appellant. A.D. said that since the appellant's arrest, she had spoken with him several times. At first, the appellant told A.D. he was sorry. Later, he told A.D. that he did not abuse the victim and that the victim was lying because she did not like him. A.D. said that although the victim called the appellant "daddy," the victim and the appellant never had a close relationship.

On cross-examination, A.D. acknowledged telling Detective Ford that the victim claimed that the victim and the appellant were on the floor, that the appellant was on top of the victim, and that the victim's panties were pulled down. A.D. said that after the victim came into A.D.'s bedroom and told her about the abuse, the victim took A.D. into the room; showed A.D. a towel and pair of panties on the floor; and told A.D., "[H]e tried to touch me." A.D. said she did not question the victim at that time but later "went into the details" with the victim. She said the victim had never accused anyone else of sexual abuse but that the victim had accused the appellant of touching her while the family lived in Mason, Tennessee, a couple of years before the appellant's trial. A.D. said she did not believe the victim at that time and did not report the victim's allegations to the police. She said she believed the victim's allegations this time because "I saw the expression . . . and the scaredness on her face."

Margaret McCallum testified that she was a sexual assault resource nurse at the MSARC and interviewed A.D. and the victim on November 15. McCallum said that

---

[1]In order to protect the victim's identity, we have chosen to refer to some of the members of the victim's family by their initials.

according to A.D., the victim woke A.D. and told A.D., "He did it again. He touched me." McCallum said the victim also told A.D., "He came in while I was sleeping, and he was on top of me. . . . My panties was on the floor in the bedroom, on the floor with the towel." McCallum said she interviewed the victim. The victim told McCallum that the appellant was on top of the victim and touched her private part with his private part. McCallum said the victim also told her, "He did it before when my mom used to go to work at night. Then he would touch his private part with my private part. Sometimes some white liquidy stuff would come out of his private part." McCallum examined the victim and found redness around the victim's hymen, which she described as a recent injury, and a tear at the top of the victim's hymenal tissue, which she described as a chronic injury. McCallum swabbed just inside the victim's vagina and prepared vaginal slides. While looking at the slides under a microscope, McCallum saw what appeared to be one non-mobile sperm. She said she questioned what she was seeing and called in another nurse to look at the slide. The second nurse verified the presence of a sperm. McCallum tested the victim for sexually transmitted diseases, and the test results were negative. On cross-examination, McCallum testified that the victim did not say anything about the appellant's touching or penetrating her with his fingers.

Detective Pamela Ford with the City of Covington Police Department testified that about 6:30 a.m. on November 15, she learned about an alleged child rape. She met with A.D. and the victim at the police department and transported them to the MSARC. After the victim's examination, A.D. dropped off her children at a relative's home. Then Detective Ford and A.D. went to A.D.'s home, where Detective Ford arrested the appellant. The appellant waived his rights at the police department and gave the following statement:

> It was around three o'clock or 3:30 a.m. when I got home. I sat up for a while and talked to my wife. I put my other two kids in the bed, [K.D.] and [T.D.], to bed. This was around 5:30 or six o'clock a.m.
> I put [T.D.] in the bed with [the victim]. [T.D.] asked me to lay down with her for a while. I started playing with myself. I was high off of weed. I began touching [the victim]. I was just rubbing on her private part. When I was rubbing her, my fingers went into her. It was the third finger from my thumb, my middle finger.
> [The victim] woke up. I got up and smoked a cigarette, and I heard [the victim] telling her mother that I had touched her. I told my wife I was sorry, that I didn't mean to hurt her or touch her. I got a problem. I feel like I need help.

Detective Ford said she delivered the victim's rape kit from the MSARC to the Tennessee

-3-

Bureau of Investigation.

On cross-examination, Detective Ford testified that the appellant was asleep when she and A.D. returned from the MSARC. An audio recorder was at the police department during the appellant's interview, but Detective Ford did not use it because it was locked in another office. The appellant never told Detective Ford that he did not abuse the victim. Detective Ford denied threatening or coercing the appellant.

Owen Hull, a correctional officer at the Tipton County Jail, testified that in the latter part of October 2009, the appellant was an inmate at the jail and asked Officer Hull about the definition of rape. Officer Hull got a dictionary, wrote down the definition, and gave it to the appellant. He said the appellant looked at the definition and asked, "It isn't rape, is it, if I only stuck my finger in her?" On cross-examination, Officer Hull said that he did not make a written report of the incident until more than one month later on November 30, 2009.

The then twelve-year-old victim testified that she was born on August 22, 1997. On the night in question, the victim was in bed with her little sister. The appellant came into the victim's bedroom and started pulling the victim's underwear off while the victim pretended to be asleep. She said, "He put his private up against mine and he was rubbing it." She said his private was hard and did not go inside her private but just rubbed against her. After he left the room, the victim went into the bathroom and her mother's bedroom. She woke her mother and told her mother what had happened. The victim acknowledged that she talked with Detective Ford, someone at the Carl Perkins Center, and a nurse at the MSARC. The victim maintained at trial that the appellant's private did not go inside her private, and the trial court allowed the State to lead the victim over the appellant's objection. The State asked her, "Do you recall telling those people at the Carl Perkins Center that his private kind of went inside you?" The victim answered, "Yes, I guess." The victim said she did not lie to anyone at the Carl Perkins Center.

On cross-examination, the defense asked the victim, "Did he go inside you?" The victim answered, "No, sir."

Detective Sherri Wassal of the Tipton County Sheriff's Department testified that on November 26, 2008, she spoke with the appellant in the Tipton County Jail about a request he had made for medical treatment. During their conversation, the appellant began talking about this case. Detective Wassal informed the appellant about his rights, and the appellant signed a waiver of rights form. The State played a video recording of the appellant's statements to Detective Wassal. During the recording, the appellant said that "I want to get some help for what I done" and that his fingers might have gone inside the victim but that he did not remember. He asked Detective Wassal if he could live with his wife when he was

released since "this happened in our home." The appellant denied sexually abusing the victim in Mason.

The jury convicted the appellant of rape of a child, a Class A felony. After a sentencing hearing, the trial court sentenced him to twenty-five years in confinement to be served at one hundred percent.

## II. Analysis

### A. Sufficiency of the Evidence

The appellant contends that the evidence is insufficient to support the conviction because the State failed to obtain DNA evidence from the sperm found inside the victim and because the victim testified that the appellant did not penetrate her. The State argues that the evidence is sufficient. We agree with the State.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. See id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Rape of a child is the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). The indictment in this case alleged that the appellant committed child rape by knowingly penetrating the victim.

Taken in the light most favorable to the State, the evidence shows that in the early morning hours of November 15, 2008, the appellant went into the victim's bedroom, pulled down her panties, and got on top of her. The appellant then penetrated the victim's vagina. The appellant told Detective Ford and indicated to Officer Hull that he penetrated the victim's vagina with his fingers. Although the victim testified that the appellant did not penetrate her, she acknowledged on direct examination that she told someone at the Carl Perkins Center that the appellant's penis "kind of went inside" her vagina. The jury, not this court, was in the best position to judge the credibility of the witnesses and to decide whether the appellant penetrated the victim. The evidence is sufficient to support the conviction.

## B. Election of Offenses

Next, the appellant contends that the trial court erred by failing to require the jury to determine whether his penetration of the victim was digital or penile. The State argues that the trial court properly determined that an election of offenses was not required in this case. We agree with the State.

After the close of proof, defense counsel argued that the State was required to elect whether the appellant penetrated the victim with his fingers or his penis. The trial court disagreed, stating, "I believe the rape of a child includes penetration by the defendant of the victim's, in this case the State alleges, genital opening by any part of the defendant's body." The defense argued that in order have a unanimous verdict, the trial court should instruct the jury to agree on how the penetration occurred. The trial court refused.

Our supreme court has repeatedly held that, if the prosecution offers proof of multiple offenses in support of a single charged offense, it must elect the facts upon which it is relying to establish the charged offense. State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001); State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999). Requiring an election "safeguards the defendant's state constitutional right to a unanimous jury verdict by ensuring that jurors deliberate and render a verdict based on the same evidence." Johnson, 53 S.W.3d at 631 (citing Brown, 992 S.W.2d at 391).

Initially, we note that the appellant has failed to make any argument, cite to any authority, or cite to the record in support of his contention. We recognize that the "[f]ailure of the State to elect offenses when the proof requires an election is considered an error of constitutional magnitude and will result in reversal of the conviction, absent the error being harmless beyond a reasonable doubt." State v. Ronnell Jason Leberry, No. M2003-01228-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 295, at *39 (Nashville, Mar. 28, 2005) (citing State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000)). Nevertheless, because the appellant's brief is inadequate regarding this issue, he is only entitled to relief if the error

rises to the level of plain error.  See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

Tennessee Rule of Appellate Procedure 36(b) provides that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."  We may consider an issue to be plain error when all five of the following factors are met:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted); see also State v. Smith, 24 S.W.3d 274, 283 (Tenn. 2000) (adopting the Adkisson test for determining plain error).  Furthermore, the ""plain error" must be of such a great magnitude that it probably changed the outcome of the trial.'"  Adkisson, 899 S.W.2d at 642 (quoting United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988)).

The appellant is not entitled to plain error relief because no rule of law was breached. The indictment alleged only one offense, and the State offered proof of only one offense. That offense was the appellant's one-time penetration of the victim's vagina on November 15, 2008.  The testimony differed as to whether that penetration was digital or penile. However, all twelve jurors obviously concluded that the appellant penetrated the victim's vagina. The object used to penetrate the victim's vagina, whether it be the appellant's finger or penis, was irrelevant.  Given that the State did not offer proof of multiple offenses in support of the single charged offense, an election of offenses was not required.

C.  Reference to Failure to Testify

The appellant contends that the prosecutor improperly commented on his failure to testify during the prosecutor's closing argument.  The State contends that the prosecutor's comment was made in response to the appellant's inappropriate outburst and, in any event, was a correct statement of the law.  We conclude that the appellant is not entitled to relief.

During the State's closing argument, the prosecutor said that the appellant admitted to police officers that he might have penetrated the victim.  The appellant interrupted the

prosecutor's argument, saying, "That statement is a lie, sir."  The prosecutor then stated,

> You will be the judge of the facts, and you're not to listen to
> unsworn testimony or outbursts from somebody.  You are to
> listen to what you hear from people that are willing to take an
> oath and tell you what happened under oath.

Defense counsel objected, arguing that the prosecutor was commenting on the appellant's failure to testify.  The trial court instructed the jury as follows:

> Okay.  Ladies and gentlemen, you are to ignore any outbursts
> made.  You have to make your decision based upon the sworn
> testimony of the witnesses, the exhibits, and the charge that I
> will give you at the conclusion of closing statements.

Defense counsel then requested a curative instruction, and the trial court stated, "I'll give it in the charge."

It is constitutionally impermissible for a prosecutor to comment upon the accused's silence during the course of trial.  State v. Transou, 928 S.W.2d 949, 960 (Tenn. Crim. App. 1996).  The prosecutor's first statement, that the jury could not listen to unsworn testimony or outbursts, was proper.  The prosecutor's second statement, that the jury was to "listen to what you hear from people that are willing to take an oath and tell you what happened under oath," could be construed as an indirect reference to the appellant's failure to testify.  In any event, the trial court instructed the jury during the charge,

> The defendant has not taken the stand to testify as a
> witness, but you shall place no significance on that.  The
> defendant is presumed innocent, and the burden is on the State
> to prove his guilt beyond a reasonable doubt.  He is not required
> to take the stand in his own behalf, and his election not to do so
> cannot be considered for any purpose against him, nor can any
> inference be drawn from such fact.

We generally presume that a jury has followed the trial court's instructions.  See State v. Butler, 880 S.W.2d 395, 399 (Tenn. Crim. App. 1994).  Moreover, given the proof against the appellant, we conclude that any error was harmless.  See Tenn. R. App. P. 36(a).

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE